COLLIN J. COX, *pro hac vice*
  CCox@gibsondunn.com
BENJAMIN D. BETNER, *pro hac vice*
JOHANNA E. SMITH, *pro hac vice*
GIBSON, DUNN & CRUTCHER LLP
811 Main Street, Suite 3000
Houston, TX 77002
TELEPHONE: 346.718.6600
FACSIMILE:  346.718.6620

KRISTIN A. LINSLEY, SBN 154148
  KLinsley@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 MISSION STREET, SUITE 3000
SAN FRANCISCO, CA 94105-0921
TELEPHONE: 415.393.8200
FACSIMILE:  415.393.8306

Attorneys for Defendant META PLATFORMS, INC.
(f/k/a Facebook, Inc.)

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| JANE DOE (K.B.),<br><br>          Plaintiff,<br><br>     v.<br><br>BACKPAGE.COM, LLC, et al.,<br><br>          Defendants. | Case No.: 23-CV-02387-JST<br><br>**DEFENDANT META PLATFORMS, INC.'S NOTICE OF MOTION AND RULE 12(C) MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>Date:     February 1, 2024<br>Time:     2:00 PM<br>Place:    Videoconference<br>Judge:    The Honorable Jon S. Tigar |

Defendant Meta Platforms, Inc.'s Rule 12(c) Motion for Judgment on the Pleadings
Case No.: 23-CV-02387-JST

## NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS

TO THIS HONORABLE COURT, THE PARTIES, AND THEIR ATTORNEYS OF RECORD, PLEASE TAKE NOTICE THAT on February 1, 2024, at 2:00 p.m. via videoconference, or as soon thereafter as the parties may be heard before the Honorable Jon S. Tigar, Defendant Meta Platforms, Inc. will move the Court for judgment on the pleadings. Meta respectfully moves under Federal Rule of Civil Procedure 12(c) on the grounds that Plaintiff's claim is barred by section 230 of the Communications Decency Act and that Plaintiff's pleadings fail to state a claim for relief: *First*, Plaintiff's claim is barred by section 230, because Meta is an interactive computer service provider that Plaintiff seeks to hold liable for the content of a third-party criminal. And *second*, Plaintiff's claim also fails because she has failed to plead adequately the elements of a section 1595 claim. This Motion is based on this Notice of Motion and Motion for Judgment on the Pleadings, the attached Memorandum of Points, all pleadings and papers filed herein, oral argument of counsel, and any other matter that may be considered by this Court on this Motion.

## RELIEF SOUGHT

As set forth in detail in the Proposed Order submitted with this motion, Meta respectfully requests that the Court grant judgment on the pleadings in Meta's favor.

Dated: September 22, 2023

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

*/s/ Collin J. Cox*
By: Collin J. Cox

Attorneys for Defendant META
PLATFORMS, INC. (f/k/a Facebook, Inc.)

## TABLE OF CONTENTS

**Page**

STATEMENT OF ISSUE TO BE DECIDED..........................................................................1

STATEMENT OF RELEVANT FACTS ...............................................................................2

LEGAL STANDARD............................................................................................................3

ARGUMENT ........................................................................................................................4

    I.      Section 230 Bars Plaintiff's Claim. ..........................................................5

          A.    Meta Provides Interactive Computer Services............................................6

          B.    Plaintiff's Claim Treats Meta as the Publisher or Speaker of Content Created by a Third-Party Information Content Provider. ...........6

          C.    Plaintiff Cannot Avoid Section 230 Through Artful Pleading. .................9

          D.    FOSTA Does Not Exempt Plaintiff's Claim from Section 230 Immunity...............................................................................................12

    II.     Plaintiff Has Failed Adequately to Allege a Section 1595 Claim. ......................14

CONCLUSION.....................................................................................................................18

Defendant Meta Platforms, Inc.'s Rule 12(c) Motion for Judgment on the Pleadings
Case No.: 23-CV-02387-JST

## TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)............................................................................................8, 17

*B.J. v. G6 Hosp., LLC*,
2023 WL 3569979 (N.D. Cal. May 19, 2023).............................................15, 16, 17

*Barnes v. Yahoo!, Inc.*,
570 F.3d 1096 (9th Cir. 2009), *as amended* (Sept. 28, 2009).........................5, 6, 10

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007).................................................................................................4

*Carafano v. Metrosplash.com, Inc.*,
339 F.3d 1119 (9th Cir. 2003) ................................................................................8

*Daniel v. Armslist, LLC*,
926 N.W.2d 710 (Wis. 2019)..................................................................................11

*Doe #1 v. Red Roof Inns, Inc.*,
21 F.4th 714 (11th Cir. 2021) ................................................................................16

*Doe v. Reddit*,
2021 WL 5860904 (C.D. Cal. Oct. 7, 2021)......................................................16, 17

*L.W. ex rel. Doe v. Snap Inc.*,
___ F. Supp. 3d. ___, 2023 WL 3830365 (S.D. Cal. June 5, 2023) ............................10, 11, 14

*Doe v. United States*,
419 F.3d 1058 (9th Cir. 2005) .................................................................................3

*Does 1-6 v. Reddit, Inc.*,
51 F.4th 1137 (9th Cir. 2022) ................................................4, 5, 12, 13, 14, 15

*Dyroff v. Ultimate Software Grp., Inc.*,
934 F.3d 1093 (9th Cir. 2019) ....................................................................7, 8, 11, 12

*Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*,
521 F.3d 1157 (9th Cir. 2008) (en banc) ..............................4, 5, 7, 8, 10, 11, 12

*Fed. Agency of News LLC v. Facebook, Inc.*,
395 F. Supp. 3d 1295 (N.D. Cal. 2019) ..................................................................6

*Force v. Facebook, Inc.*,
934 F.3d 53 (2d Cir. 2019)......................................................................................7

*Fyk v. Facebook, Inc.*,
2019 WL 11288576 (N.D. Cal. June 18, 2019), *aff'd*, 808 F. App'x 597 (9th
Cir. 2020) ...............................................................................................................9

Defendant Meta Platforms, Inc.'s Rule 12(c) Motion for Judgment on the Pleadings
Case No.: 23-CV-02387-JST

**TABLE OF AUTHORITIES, *cont'd***

*Geiss v. Weinstein Co. Holdings LLC*,
383 F. Supp. 3d 156 (S.D.N.Y. 2019)................................................................15

*In re Gilead Scis. Sec. Litig.*,
536 F.3d 1049 (9th Cir. 2008) ...........................................................................4

*Gregg v. Haw. Dep't of Pub. Safety*,
870 F.3d 883 (9th Cir. 2017) .............................................................................3

*J.B. v. G6 Hosp., LLC*,
2020 WL 4901196 (N.D. Cal. Aug. 20, 2020), *abrogated in part on other grounds by Does 1-6 v. Reddit, Inc.*, 51 F.4th 1137 (9th Cir. 2022)................................16, 17

*Kimsey v. Yelp! Inc.*,
836 F.3d 1263 (9th Cir. 2016) .......................................................4, 6, 7, 9, 10

*Klayman v. Zuckerberg*,
753 F.3d 1354 (D.C. Cir. 2014) .........................................................................6

*Koninklijke Philips N.V. v. Acer Inc.*,
371 F. Supp. 3d 641 (N.D. Cal. 2019) ...............................................................4

*La'Tiejira v. Facebook, Inc.*,
272 F. Supp. 3d 981 (S.D. Tex. 2017) ...............................................................6

*Levitt v. Yelp! Inc.*,
765 F.3d 1123 (9th Cir. 2014) ...........................................................................7

*Nelson v. City of Irvine*,
143 F.3d 1196 (9th Cir. 1998) ...........................................................................3

*Rigsby v. GoDaddy Inc.*,
59 F.4th 998 (9th Cir. 2023) ..............................................................................5

*Sikhs for Justice "SFJ", Inc. v. Facebook, Inc.*,
144 F. Supp. 3d 1088 (N.D. Cal. 2015), *aff'd sub nom. Sikhs for Justice, Inc. v. Facebook, Inc.*, 697 F. App'x 526 (9th Cir. 2017)..........................................6, 10

*Twitter, Inc. v. Taamneh*,
598 U.S. 471 (2023)..........................................................................................17

**Statutes**

18 U.S.C. §1591................................................................................................12, 13

18 U.S.C. §1595............................................................................................12, 13, 14

47 U.S.C. §230..................................................................................................5, 6, 10

Pub. L. 115-164, 132 Stat. 1253 (2018)...................................................................12

Defendant Meta Platforms, Inc.'s Rule 12(c) Motion for Judgment on the Pleadings
Case No.: 23-CV-02387-JST

## TABLE OF AUTHORITIES, *cont'd*

### Rules

Fed. R. Civ. P. 8 ........................................................................................................................3

Fed. R. Civ. P. 12 ..........................................................................................................2, 3, 18

Defendant Meta Platforms, Inc.'s Rule 12(c) Motion for Judgment on the Pleadings
Case No.: 23-CV-02387-JST

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendant Meta Platforms, Inc. operates Instagram, a social-media service that was tragically misused by a third-party criminal who now is incarcerated for his despicable acts against Plaintiff. The claim here, however, is brought not against the criminal, but against Meta, which took no affirmative role in Plaintiff's trafficking and rendered no aid to her trafficker. This claim asks the Court to find Meta civilly liable for harms caused by a bad actor's misuse of a neutral social-media tool.

Plaintiff's claim is legally untenable and contrary to Ninth Circuit law. It falls squarely in the heart of section 230 of the Communications Decency Act, which protects a service like Meta that played no affirmative part in Plaintiff's injuries. And Plaintiff also fails to state a claim on which relief can be granted. Among other deficiencies, the Second Amended Complaint (the "complaint") does not identify any benefit that Meta knowingly received from her trafficking, or any way in which Meta knowingly participated in a sex-trafficking venture, two necessary elements of her claim. In light of such meager—and legally contradictory—pleadings, Meta is entitled to judgment.

## STATEMENT OF ISSUE TO BE DECIDED

Should judgment on the pleadings be granted in favor of Meta because Plaintiff's claim is barred by section 230 of the Communications Decency Act and because the complaint fails to state a claim?

### STATEMENT OF RELEVANT FACTS[1]

Meta provides online social-media services, including Instagram. Instagram users may form connections with each other and post and interact with other users' online content. Second Am. Compl., Dkt. 13, ¶¶3, 106. Plaintiff created an Instagram account, and later received "messages" and "posted statements" on Instagram from R.L., a third-party criminal. *Id.* ¶¶116–18. Meta was unaware of these messages at the time they were sent. *Id.* ¶113. Plaintiff subsequently met R.L. in person, at his suggestion. *Id.* ¶¶114–15.

According to the complaint and after meeting her in person, R.L began sex trafficking Plaintiff by "publically [sic] post[ing] photos" using "code[d]" language advertising her for sex. *Id.* ¶¶13, 115–16, 119, 125, 128. In response, he received messages from third-party "sex buyers" on Instagram. *Id.* ¶125. Plaintiff alleges she was trafficked by R.L. between July 2017 and July 2018. But Plaintiff does not allege that Meta was paid by R.L. for any of the allegedly "code[d]" posts or that Meta received any benefit from R.L. related to her trafficking.

Although Plaintiff's complaint is riddled with generalized allegations about Meta in other contexts, it contains no specific pleadings concerning Meta's alleged role in her trafficking. Plaintiff claims that Instagram serves as a "breeding ground," "hub," or "marketplace" for illicit content and that alleged sex traffickers were not prevented from creating accounts on the service. *E.g.*, *id.* ¶¶141(h), (i), (m), 142. And she says that Meta sells advertising on its Instagram pages, *see id.* ¶107, but does not allege that Meta sold paid advertising space to R.L. or otherwise earned any revenue from him. Nor does Plaintiff identify any specific way that Meta itself somehow facilitated a connection between her and R.L. Rather, Plaintiff pleads that Meta connects "users"

---

[1] Per Rule 12(c), Meta states the operative facts as pleaded in the complaint. Meta does not admit the truth of any such allegation.

Defendant Meta Platforms, Inc.'s Rule 12(c) Motion for Judgment on the Pleadings
Case No.: 23-CV-02387-JST

"indiscriminately"—but did not connect R.L. and Plaintiff. *E.g.*, *id.* ¶¶3, 105, 107, 109, 141(b), 141(g).

Plaintiff does not allege or suggest that Meta created, edited, approved, or promoted R.L.'s public posts; rather, Meta allegedly views the interactions and content of its users with a "blind eye." *Id.* ¶¶3–4. Plaintiff's chief complaint is that Meta allegedly failed to "flag" or "pull down" or "remove" or "prevent" R.L.'s harmful third-party content. *Id.* ¶¶113, 119. Plaintiff asserts that Meta thereby supposedly benefitted—in an unspecified way—from Plaintiff's trafficking.

Plaintiff's trafficker was tried and convicted of federal sex-trafficking crimes. *Id.* ¶133. Thereafter, Plaintiff sued Meta, which removed the case to federal court, answered the complaint, and, under Instagram's forum-selection clause, transferred the case to this District. *See* Dkts. 19, 47, 55.

## LEGAL STANDARD

A party may move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c). The pleadings are considered "closed" once a complaint has been filed and answered by all defendants, assuming no counterclaim or cross claim is made. *Doe v. United States*, 419 F.3d 1058, 1061 (9th Cir. 2005).

A Rule 12(c) motion for judgment on the pleadings is functionally equivalent to a Rule 12(b)(6) motion to dismiss, so the same standard applies. *Gregg v. Haw. Dep't of Pub. Safety*, 870 F.3d 883, 887 (9th Cir. 2017). That is, judgment on the pleadings is proper when, "taking all the allegations in the pleadings as true, the moving party is entitled to judgment as a matter of law." *Id.* (quoting *Nelson v. City of Irvine*, 143 F.3d 1196, 1200 (9th Cir. 1998)); *see also* Fed. R. Civ. P. 8(a) (complaint must contain "a short and plain statement of the claim showing that the

3

pleader is entitled to relief"). To avoid dismissal, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Although courts will credit well-pleaded factual allegations in the complaint, "courts do not 'accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.'" *Koninklijke Philips N.V. v. Acer Inc.*, 371 F. Supp. 3d 641, 643–44 (N.D. Cal. 2019) (quoting *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008)). Under these standards, judgment in favor of Meta is warranted, as Meta shows below.

## ARGUMENT

Plaintiff's claim is inconsistent with three governing Ninth Circuit decisions concerning section 230:

- The first, *Kimsey*, holds that, under section 230, websites are not responsible for harmful content authored by a third party. *Kimsey v. Yelp! Inc.*, 836 F.3d 1263 (9th Cir. 2016).

- The second, *Roommates.com*, establishes that a website must make a "material[ ]" contribution to the illegal nature of a third party's content to fall outside of section 230's robust protection; mere indifference is not enough. *Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157 (9th Cir. 2008) (en banc).

- And the third, *Reddit*, tells us that section 230's sex-trafficking exception will not apply unless the website is alleged to have itself violated the federal criminal sex-trafficking statute. *Does 1-6 v. Reddit, Inc.*, 51 F.4th 1137 (9th Cir. 2022).

And her claim is likewise inconsistent with the parameters of section 1595. Because Plaintiff cannot clear any of these legal hurdles, judgment on the pleadings is warranted.

4

## I.    Section 230 Bars Plaintiff's Claim.

Section 230 provides "robust" protection to websites from claims based on materials posted by someone else. *Reddit*, 51 F.4th at 1140 (citation omitted); *see* 47 U.S.C. §230(c)(1). It protects defendants not only "from ultimate liability," but "from having to fight costly and protracted legal battles." *Roommates.com*, 521 F.3d at 1175. Thus, section 230 "must be resolved in favor of immunity" in "close cases." *Id.* at 1174.

To qualify under section 230, a defendant must be "(1) a provider or user of an interactive computer service (2) whom a plaintiff seeks to treat . . . as a publisher or speaker (3) of information provided by another information content provider." *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1100 (9th Cir. 2009), *as amended* (Sept. 28, 2009) (footnote omitted).

The claim against Meta easily meets these criteria: Meta is an interactive computer service provider because it provides a website that enables computer-server access to users. And Plaintiff's claim treats Meta as the publisher of online content created by a third-party user—her alleged trafficker, R.L. Plaintiff's entire claim and each of her theories of liability are premised on R.L.'s speech. Indeed, if R.L.'s "messages," "posted statements," "public posts," "photos," "emojis," and "emoticons," *see* Compl. ¶¶10, 89, 111, 114, 116–19, 122, were removed from the equation, Plaintiff's entire case would fall apart. Plaintiff pleads no independent actions by Meta from which liability to her could flow.

In enacting section 230, Congress made a distinct policy choice to protect companies like Meta from claims like this one. Congress chose "not to deter harmful online speech through the separate route of imposing tort liability on companies that serve as intermediaries for other parties' potentially injurious messages." *Rigsby v. GoDaddy Inc.*, 59 F.4th 998, 1007 (9th Cir. 2023)

Defendant Meta Platforms, Inc.'s Rule 12(c) Motion for Judgment on the Pleadings
Case No.: 23-CV-02387-JST

(citation and internal quotation marks omitted). Plaintiff's claim falls at the heart of section 230's protections.

### A.    Meta Provides Interactive Computer Services.

Section 230 defines an "interactive computer service" "provider" to include (1) an "information service, system, or access software provider" that (2) "provides or enables computer access by multiple users to a computer server." 47 U.S.C. §230(f)(2), (f)(4). The most common interactive computer service providers today are websites. *Kimsey*, 836 F.3d at 1268.

As courts have uniformly recognized, Meta "unquestionably" meets the criteria for an interactive computer service provider. *Fed. Agency of News LLC v. Facebook, Inc.*, 395 F. Supp. 3d 1295, 1305 (N.D. Cal. 2019) (collecting cases). Meta "provides or enables computer access by multiple users to a computer server," 47 U.S.C. §230(f)(2)—namely, by allowing third-party users to post content online. *See generally* Compl. ¶106 (referring to "the content that [Meta's] users post and interact with"). Courts across the country agree. *See*, *e.g.*, *Sikhs for Justice "SFJ", Inc. v. Facebook, Inc.*, 144 F. Supp. 3d 1088, 1093 (N.D. Cal. 2015) (concluding that Meta is an interactive computer service provider for purposes of section 230), *aff'd sub nom. Sikhs for Justice, Inc. v. Facebook, Inc.*, 697 F. App'x 526 (9th Cir. 2017); *Klayman v. Zuckerberg*, 753 F.3d 1354, 1357 (D.C. Cir. 2014) (same); *La'Tiejira v. Facebook, Inc.*, 272 F. Supp. 3d 981, 992 (S.D. Tex. 2017) (same).

### B.    Plaintiff's Claim Treats Meta as the Publisher or Speaker of Content Created by a Third-Party Information Content Provider.

Plaintiff's claim also seeks to "treat [Meta] as a publisher or speaker of information provided by another information content provider." *Barnes*, 570 F.3d at 1096. "Information content provider" means a third party who is "responsible, in whole or in part, for the creation or development of information provided through the Internet." 47 U.S.C. §230(f)(3). Accordingly, to

6

avoid section 230's bar, Plaintiff must plead that the harmful content "was not, as is usual, authored by a user." *Kimsey*, 836 F.3d at 1268 (quoting *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014)).

There is no plausible theory under which the challenged content is attributable to Meta. For an interactive computer service like Instagram to be an information content provider for third-party content—such that section 230 would not apply—the provider must make "a material contribution to the creation or development of [the] content" at issue. *Id.* at 1269. A "material contribution" means more than just "augmenting the content generally, but . . . materially contributing ***to its alleged unlawfulness***." *Roommates.com*, 521 F.3d at 1168 (emphasis added).

In *Roommates.com*, the en banc Ninth Circuit denied section 230 immunity to a defendant website that ***required*** users to input discriminatory content as a prerequisite to accessing its tenant-landlord matching service. 521 F.3d at 1169. Specifically, the website required its users to state their "sex, sexual orientation, and whether they had children, [and] then directed users to describe their preferred tenant or landlord using pre-populated answers concerning the same criteria." *Id.* at 1161, 1169–70. In so doing, the website "materially contributed to the unlawfulness of the posted content" because "the website *itself* generated the options for selecting a tenant or landlord based on discriminatory criteria." *Id.* at 1169–70 (emphasis in original).

By contrast, simply making third-party content more "visible," "available," or "usable" does not amount to "developing" the underlying information within the meaning of section 230. *See Force v. Facebook, Inc.*, 934 F.3d 53, 70 (2d Cir. 2019). A website provides neutral tools— and therefore no material contribution—when it does not request or require the unlawful content. *See Dyroff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1099 (9th Cir. 2019) (affirming dismissal under section 230 when plaintiff failed to "plead that [the defendant website] required

7

users to post specific content, made suggestions regarding the content of potential user posts, or contributed to making unlawful or objectionable user posts").

"So long as a third party willingly provides the essential published content, the interactive [computer] service provider receives full immunity regardless of the specific editing or selection process." *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1124 (9th Cir. 2003). Thus, the Ninth Circuit has applied section 230 to a website that matched romantic partners based on their voluntary inputs and a website that used algorithms to recommend and notify users about both lawful and unlawful third-party content. *See id.* at 1124; *Dyroff*, 934 F.3d at 1098.

Plaintiff cannot satisfy the Ninth Circuit's "material contribution" requirement. Allegations that a third-party criminal posted harmful content "on" or "through" Instagram, *see, e.g.*, Compl. ¶¶10, 89–90, 119, are not allegations about actions by—or material contributions from—Instagram or Meta itself. The complaint does not allege that Meta "elicit[ed] the allegedly unlawful content" or "ma[de] aggressive use of it in conducting its business," as did the website in *Roommates.com*, 521 F.3d at 1172. Instead, Plaintiff says just the opposite, stating that Meta turns a "blind eye" toward user content and provides a platform and connections "indiscriminately." Compl. ¶¶3–4. And Plaintiff's conclusory assertions that Meta "facilitated," "enabl[ed]," and "permitt[ed]" her trafficking, *e.g.*, Compl. ¶130, are likewise insufficient. To state a claim, a plaintiff must include "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiff pleads no specific facts as to how such facilitation purportedly occurred. And the Ninth Circuit has applied section 230 even when a plaintiff alleged that certain of a defendant website's "functions . . . facilitated illegal [activity]." *Dyroff*, 934 F.3d at 1095 (applying section 230 although the website's "user anonymity and grouping[] facilitated illegal drug sales").

8

Plaintiff's complaint makes clear that *all* the allegedly harmful Instagram content was created and developed exclusively by someone else—a third-party criminal named "R.L." and alleged third-party "sex buyers." Plaintiff alleges that R.L. sent her "messages" and "posted statements" to her on Instagram. *Id.* ¶111; *see also id.* ¶114 (R.L. attempted to gain Plaintiff's "trust" through messages and posts). She says that R.L. then "publically [sic] posted photos" on Instagram advertising her for sex. *Id.* ¶¶116–18. And she claims that third-party "sex buyers" sent messages about her to R.L. on Instagram. *Id.* ¶125; *cf. id.* ¶103 (describing "human traffickers and criminal networks"—but not Meta itself—as "facilitat[ing] sex trafficking"). In these content-creation/development allegations, Meta is nowhere to be found. Indeed, there is no dispute that R.L. and other third parties were the "sole creator[s]" of the content placed on Instagram. *Fyk v. Facebook, Inc.*, 2019 WL 11288576, at *2 (N.D. Cal. June 18, 2019), *aff'd*, 808 F. App'x 597 (9th Cir. 2020). Because Plaintiff's claim arises entirely out of this content, her claim seeks to treat Meta as the publisher or speaker of this third-party material.

### C.    Plaintiff Cannot Avoid Section 230 Through Artful Pleading.

Plaintiff tries to distract the Court by focusing on Meta's alleged ***lack of conduct***, rather than R.L.'s ***content***, apart from which she has no claim. She focuses on what Meta "did not" do, including that it supposedly "did not flag," "did not . . . pull down," "did not[ ] remove," "did not[ ] prevent," and "d[id] not . . . screen" R.L.'s illicit content. Compl. ¶¶113, 119, 123; *see generally id.* ¶¶1–12, 100–23. And she tries to obscure from the undisputed source of her injuries—R.L.'s "publically [sic] posted photos" and other posts supposedly reflecting the "code[d]" "signs of trafficking." *Id.* ¶¶116–17, 119. But the Ninth Circuit has squarely and repeatedly rejected attempts at such "artful skirting" of section 230's robust protections. *See, e.g.*, *Kimzey*, 836 F.3d at 1266.

In *Roommates.com*, the Ninth Circuit instructed that section 230 was passed to protect websites from claims that they "didn't remove enough" problematic content. 521 F.3d at 1170. That is, Congress sought to immunize websites from "any claim that can be boiled down to the failure . . . to edit or block user-generated content." *Id.* at 1172 n.32. *Kimzey* likewise held that a website is not responsible for the harmful content authored by a third party. 836 F.3d at 1266–67. And in *Barnes*, the Ninth Circuit explained that a defendant website's failure to remove offending content "is something publishers do," and therefore is protected from suit by section 230. 570 F.3d at 1103.

For Meta to be liable under this clear Ninth Circuit law, it would have to have added materially to the ***illegal nature*** of R.L.'s content. But Plaintiff pleads nothing of the sort. Instead, her complaints against Meta lie in an alleged failure to monitor and remove content—allegations that go to the heart of what section 230 protects. In essence, Plaintiff says that Meta did nothing. It did not "flag" or "pull down" or "remove" or "prevent" harmful third-party content. Compl. ¶¶113, 119. She says that Meta's Instagram social-media service formed an "integral part of the illegal enterprise" because a third-party criminal posted harmful content there. *Id.* ¶131. But section 230 protects "any activity that can be boiled down to deciding whether to exclude material that third parties seek to post online." *Sikhs for Justice*, 144 F. Supp. 3d at 1094 (citation omitted).

By seeking to hold Meta responsible for the harmful effects (sex trafficking) of third-party content (R.L.'s posts and messages), Plaintiff's claim necessarily seeks to hold Meta liable for information originating with a third-party user. The claim therefore impermissibly "treat[s]" Meta "as the publisher" of that content. 47 U.S.C. §230(c)(1); *see also L.W. ex rel. Doe v. Snap Inc.*, ___ F. Supp. 3d. ___, 2023 WL 3830365, at *4 (S.D. Cal. June 5, 2023) (section 230 applies when "the Court must treat Defendants as publishers or speakers, regardless of how their claims are

10

framed, because their theories of liability plainly turn on Defendants' alleged failure to monitor and remove third-party content"). Indeed, but for the content created by R.L., Plaintiff would have no claim at all. This is exactly the kind of action that section 230 was designed to bar.

Plaintiff's sweeping, conclusory allegations about Meta's generalized conduct, untethered entirely from Plaintiff and R.L., are again insufficient. Although Plaintiff pleads facts about Meta connecting "users," *e.g.*, Compl. ¶¶3, 105, 107, 109, 141(b), 141(g), she never alleges that Meta connected—or did anything at all—regarding ***her*** or R.L. Instead, she admits that Meta connected users "indiscriminately," *id.* ¶3, that is, without the purpose of the connection being to connect would-be traffickers with prospective victims. And the law is clear that such "connection" functions fall squarely within section 230. *See Dyroff*, 934 F.3d at 1096 (content-neutral tools are protected by section 230); *L.W.*, 2023 WL 3830365, at *5 (collecting cases and noting that "the Ninth Circuit has consistently held that an online platform's use of neutral algorithms to recommend content to users does not forfeit the platform's entitlement to Section 230 immunity"). Although Plaintiff alleges that Meta was generally "aware" of and turned a "blind eye" toward sex trafficking on its platforms, *see, e.g.*, Compl. ¶¶1, 8, 11, 100–01, 103, 112–13, 119, 122–23, 141(k), 144–45, 147, this, too, simply harkens back to content generated and posted by generic, unspecified third parties. And mere knowledge of a third party's illicit activities "does not change the result" under section 230. *E.g.*, *Daniel v. Armslist, LLC*, 926 N.W.2d 710, 726 (Wis. 2019) (citing *Roommates.com*, 521 F.3d at 1174–75).

So too with Plaintiff's allegations that Instagram operates as a "breeding ground," "hub," or "marketplace" for illicit content and that alleged sex traffickers were not prevented from creating accounts on the service. *E.g.*, Compl. ¶¶141(h), (i), (m), 142. These allegations again hinge on the purportedly illicit content and activities of third parties—not Meta's conduct. *Cf.*

11

*Dyroff*, 934 F.4th at 1099 (in "cases of enhancement by inference, . . . section 230 must be interpreted to protect websites not merely from ultimate liability, but from having to fight costly and protracted legal battles"). Likewise, the allegation that Meta runs generic, non-illicit advertisements on pages that contain illicit content—but not even illicit content connected to Plaintiff—*see* Compl. ¶107, does not change the analysis. *Cf. Roommates.com*, 521 F.3d at 1174 ("Such weak encouragement cannot strip a website of its section 230 immunity, lest that immunity be rendered meaningless as a practical matter.").

### D.      FOSTA Does Not Exempt Plaintiff's Claim from Section 230 Immunity.

That section 230 bars Plaintiff's claim against Meta is confirmed by the Allow Victims to Fight Online Sex Trafficking Act ("FOSTA") amendments to section 230 that Congress passed in 2018. Pub. L. 115-164, 132 Stat. 1253 (2018). Those amendments exempted three limited sets of claims from section 230 immunity: (1) any "claim in a civil action" brought under 18 U.S.C. §1595, the Trafficking Victims Protection Act's civil remedies provision, but only to the extent that "the conduct underlying the claim constitutes a violation" of 18 U.S.C. §1591, the federal criminal sex-trafficking statute; (2) any state criminal charge where the "conduct underlying the charge would constitute a violation" of either section 1591 or 18 U.S.C. §2421A, another federal sex-trafficking statute; and (3) certain state Attorney General enforcement actions brought under section 1591. Pub. L. 115-164 §§4(a) & 6(a).

For a private plaintiff to invoke FOSTA's immunity exception, "she must plausibly allege that the website's *own conduct* violated section 1591." *Reddit*, 51 F.4th at 1141 (emphasis added). That is, she must plead and prove not only the elements of a section 1595 civil sex-trafficking claim—which require showing that the defendant " 'knowingly benefit[ted] . . . from participation in a venture which that person knew or should have known' was engaged in sex trafficking," *id.*

12

(quoting 18 U.S.C. §1595(a)). But she must also plead and prove the more stringent elements of the criminal sex-trafficking statute, section 1591—including that the website defendant itself "knowingly . . . benefit[ted], financially or by receiving anything of value, from participation in a [section 1591-violating sex-trafficking venture], knowing . . . or . . . in reckless disregard of the fact, that means of force, threats of force, fraud, coercion . . . , or any combination of such means will be used to cause the person to engage in a commercial sex act." 18 U.S.C. §1591(a). "Participation in a venture," in turn, requires that the defendant have "knowingly assist[ed], support[ed], or facilitat[ed] a [primary] violation of [section 1591]." *Id.* §1591(e)(4). In short, Plaintiff would have to plead facts showing that Meta "ha[d] actual knowledge of the trafficking" and knowingly benefitted from knowingly participating in her sex trafficking. *See Reddit* 51 F.4th at 1141. Put another way, Plaintiff must show that Meta's *own* conduct violated the federal criminal sex-trafficking statute—not just that someone else (like R.L.) did or that sex trafficking may generally occur on the social-media service.

This is a high bar, and Plaintiff does not clear it. The Ninth Circuit already rejected Plaintiff's various theories of liability in *Reddit* when it held that the plaintiffs there failed to plead a section 1591 claim—despite allegations that the website Reddit "provide[d] a platform where it is easy to share child pornography, highlight[ed] subreddits that feature child pornography to sell advertising on those pages, allow[ed] users who share child pornography to serve as subreddit moderators, and fail[ed] to remove child pornography even when users report[ed] it." *Id.* at 1145. In other words, there was no section 1591 claim even when the defendant website allegedly knew of and highlighted a third party's activity that violated section 1591. *Id.*

Plaintiff's allegations fail under *Reddit*. Meta purportedly "[t]urn[ing] a blind eye" to trafficking on its social-media services, Compl. ¶4, does not satisfy section 1591 because, under

13

*Reddit*, section 1591 "does not target those that merely turn a blind eye to the source of their revenue." 51 F.4th at 1145 (cleaned up). Same, too, with permitting or failing to remove illicit content on the social-media service. "[F]ailing to efficiently monitor or police user-generated content is not punishable under Section 1591." *L.W.*, 2023 WL 3830365, at *7. Rather, there must be "a causal relationship between affirmative conduct furthering the sex-trafficking venture and receipt of a benefit." *Reddit*, 51 F.4th at 1145 (citation omitted).

Generalized advertising and user-engagement benefits, without more, are also insufficient. *Id.* at 1145–46 ("[T]he plaintiffs have not alleged a connection between the child pornography posted on Reddit and the revenue that Reddit generates, other than the fact that Reddit makes money from advertising on all popular subreddits."). Plaintiff must plead "far more active and connected forms of participation" than she does in her complaint. *Id.* at 1146. That is because mere "*knowledge* of illicit activity" is **not** "tantamount to *participation* in the activity." *L.W.*, 2023 WL 3830365, at *7 (emphases in original).

## II.    Plaintiff Has Failed Adequately to Allege a Section 1595 Claim.

Even if section 230 did not bar Plaintiff's claim, judgment on the pleadings would be appropriate because the complaint does not plead a cognizable claim against Meta. To state a section 1595 claim, a plaintiff must plausibly allege that the defendant (1) "knowingly benefit[ed], financially or by receiving anything of value" (2) "from participation in a venture," which (3) "that person knew or should have known ha[d] engaged in an act in violation of" section 1591(a). 18 U.S.C. §1595(a). The complaint fails at least the first two elements of a section 1595 claim.

Plaintiff does not identify any alleged benefit that Meta purportedly knowingly received from her trafficking. "Knowingly benefit[ing]" from participation in a trafficking venture requires "actual knowledge and a 'causal relationship between affirmative conduct furthering the

14

sex-trafficking venture and receipt of a benefit.'" *Reddit*, 51 F.4th at 1145 (quoting *Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156, 169 (S.D.N.Y. 2019)).[2] At a minimum, the "knowing benefit" must flow *from* the trafficking.

But Plaintiff has not alleged any connection between R.L.'s content posted on Instagram and "the revenue that [Meta] generates, other than the fact that [Meta] makes money from advertising on [its social media service]." *See Reddit*, 51 F.4th at 1145–46; Compl. ¶¶108, 141(g). For example, Plaintiff does not allege that R.L. paid Meta for any of the public posts allegedly advertising her for sex. Nor does she say that Meta received any monetary benefit from R.L. from her trafficking. *Cf. B.J. v. G6 Hosp., LLC*, 2023 WL 3569979, at *4 (N.D. Cal. May 19, 2023) (financial benefit when hotel received royalties directly from room rental).

At most, Plaintiff asserts an extremely attenuated, passive benefit over several steps: R.L. created an account. Meta did not remove it. It is good for Meta to have users with accounts on Instagram. And on the whole, more users may lead to additional ad revenue. *See generally* Compl. ¶141(n). But Plaintiff never makes the requisite connections. She does not plead that it was *her trafficking* that caused R.L. to create an account and ultimately "benefit" Meta by having one additional user among "millions" in Texas, *see id.* ¶29. Nowhere in her complaint does Plaintiff say that R.L. or anyone else created an Instagram account *because of* her trafficking. Rather, she pleads clearly that R.L. was already an Instagram user before she even met him. *Id.* ¶¶110–11.

---

[2] Although the Ninth Circuit has not expressly defined the "knowingly benefit" standard under section 1595, it quoted *Geiss* approvingly in *Reddit*. *Geiss* held that the "knowingly benefit" standard from section 1591 applies to the "knowingly benefit" standard from section 1595 because "[a]part from the constructive knowledge provision, the operative language of the TVPA civil remedy [1595] and underlying criminal statute [1591] are identical." 383 F. Supp. 3d at 169 n.5.

15

Such scant allegations cannot satisfy the "knowing benefit" element of section 1595 beneficiary liability, making judgment on the pleadings appropriate.

The complaint also fails plausibly to allege facts showing that Meta "participat[ed]" in a sex-trafficking venture. For this element, Plaintiff must allege that Meta and R.L. "took part in a common undertaking or enterprise involving risk and potential profit." *B.J.*, 2023 WL 3569979, at *4 (quoting *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 724–25 (11th Cir. 2021)). Most courts require that, "in the absence of direct association, [the plaintiff must make] a *showing of a continuous business relationship between the trafficker and the defendant* such that it would appear that the trafficker and the defendant have established a pattern of conduct or could be said to have a tacit agreement." *J.B. v. G6 Hosp., LLC*, 2020 WL 4901196, at *9 (N.D. Cal. Aug. 20, 2020) (emphasis added) (cleaned up) (collecting cases), *abrogated in part on other grounds by Reddit*, 51 F.4th 1137. Allegations of but-for causation do not meet this standard. *See id.* Instead, when the defendant is "not accused of having made a business deal with the alleged traffickers—and did not have any monetary relationship with those traffickers—the standard for stating a claim under §1595 has not be[en] satisfied." *Doe v. Reddit*, 2021 WL 5860904, at *8 (C.D. Cal. Oct. 7, 2021).

The complaint contains only but-for allegations against Meta. *E.g.*, Compl. ¶131. It pleads no facts to show any "continuous business relationship," specific "business deal," or any "monetary relationship" between Meta and R.L. And Plaintiff does not allege that Meta in any way helped create, edit, or approve the public posts at issue. *See id.* ¶122. Indeed, Plaintiff admits that Meta was not even aware of R.L.'s activity on the platform when he began interacting with her. *See, e.g., id.* ¶113.

Plaintiff alleges only that Meta provided the same social-media service it offers to all of its users. This and other allegations fall short of the factual pleadings that would be needed to establish

16

a "tacit agreement" with R.L. *Cf. B.J.*, 2023 WL 3569979, at *5 (no "participation in a venture" by hotel defendants when the plaintiff's allegations "d[id] not suggest hotel employees engaged in conduct outside the scope of their ordinary responsibilities, let alone any kind of 'tacit agreement' with [her] trafficker to engage in the alleged sex trafficking venture"). To conclude that such allegations are sufficient to show participation by Meta would be to say that Meta "enters into tacit agreements with all traffickers (or even all posters) that use its website[s], and there is no factual basis pled that makes this claim plausible." *J.B.*, 2020 WL 4901196, at *9. Such a conclusion would "mean that all web-based communications platforms have a legal duty to inspect every single user-generated message before it is communicated to a single person or displayed to the public, lest such platforms be deemed to have participated in the venture"—hardly a tenable result. *Id.* (cleaned up); *cf. Twitter, Inc. v. Taamneh*, 598 U.S. 471, 505 (2023) (no aiding-and-abetting claim when plaintiffs "allege[d] only that defendants supplied generally available virtual platforms that ISIS made use of, and that defendants failed to stop ISIS despite knowing it was using those platforms").

Nor do Plaintiff's generalized allegations about unnamed and irrelevant "sex traffickers" satisfy section 1595's "participation" element. *See Reddit*, 2021 WL 5860904, at *8 (allegations that could be summarized as, "Reddit has 'affiliations with sex traffickers by enabling the posting of child pornography on its websites' and 'making it easier to connect traffickers with those who want to view child pornography,'" were insufficient to show a continuous business relationship). And Plaintiff's unsupported assertion that Meta "directly profited from her trafficking," Compl. ¶130, is a conclusory allegation "devoid of further factual enhancement," *Iqbal*, 556 U.S. at 678, and therefore insufficient to survive a motion for judgment on the pleadings.

17

## CONCLUSION

Meta respectfully requests that the Court grant judgment on the pleadings under Rule 12(c).

Defendant Meta Platforms, Inc.'s Rule 12(c) Motion for Judgment on the Pleadings
Case No.: 23-CV-02387-JST

Dated: September 22, 2023

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

*/s/ Collin J. Cox*

By: Collin J. Cox

Attorneys for Defendant META PLATFORMS, INC. (f/k/a Facebook, Inc.)

19