KRISTIN A. LINSLEY, SBN 154148
  KLinsley@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
One Embarcadero Center, Suite 2600
San Francisco, CA  94111
Telephone: 415.393.8200
Facsimile:  415.393.8306

COLLIN J. COX, *pro hac vice*
  CCox@gibsondunn.com
BENJAMIN D. BETNER, *pro hac vice*
JOHANNA E. SMITH, *pro hac vice*
GIBSON, DUNN & CRUTCHER LLP
811 Main Street, Suite 3000
Houston, TX  77002
Telephone: 346.718.6600
Facsimile:  346.718.6620

Attorneys for Defendant META PLATFORMS, INC. (f/k/a Facebook, Inc.)

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| JANE DOE (K.B.),<br><br>        Plaintiff,<br><br>  v.<br><br>BACKPAGE.COM, LLC, et al.,<br><br>    Defendants. | Case No.: 23-CV-02387-RFL<br><br>**DEFENDANT META PLATFORMS, INC.'S NOTICE OF MOTION AND RULE 12(b)(6) MOTION TO DISMISS THIRD AMENDED COMPLAINT**<br><br>Date:        November 5, 2024<br>Time:       10:00 AM<br>Place:      Courtroom 15, 18th Floor<br>Judge:    The Honorable Rita F. Lin |

## NOTICE OF MOTION AND MOTION TO DISMISS

TO THIS HONORABLE COURT, THE PARTIES, AND THEIR ATTORNEYS OF RECORD, PLEASE TAKE NOTICE THAT, on November 5, 2024, at 10:00 a.m., or as soon thereafter as the parties may be heard, at the San Francisco Courthouse, Courtroom 15, 18th Floor, before the Honorable Rita F. Lin, Defendant Meta Platforms, Inc. (f/k/a Facebook, Inc.) will move to dismiss Plaintiff's Third Amended Complaint under Federal Rule of Civil Procedure 12(b)(6) on the grounds that (1) all of Plaintiff's claims are barred by section 230 of the Communications Decency Act because Meta is an interactive computer service provider that Plaintiff seeks to hold liable as a publisher or speaker of third-party content, and (2) the claims asserted in the amended complaint fail to state a claim for relief because Plaintiff has failed to plead facts that, taken as true, would establish the elements of a section 1595 claim or of her various state-law claims. This Motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, all pleadings and papers filed herein, arguments presented by counsel at any hearing, and any other matter that may be considered by this Court on this Motion.

## RELIEF SOUGHT

As set forth in the Proposed Order submitted with this motion, Meta respectfully requests that the Court dismiss Plaintiff's Third Amended Complaint with prejudice.

Dated: June 18, 2024

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

*/s/ Collin J. Cox*
By: Collin J. Cox

Attorneys for Defendant META
PLATFORMS, INC. (f/k/a Facebook, Inc.)

DEFENDANT META PLATFORMS, INC.'S NOTICE OF MOTION & RULE 12(B)(6) MOTION TO DISMISS
THIRD AMENDED COMPLAINT
CASE NO.: 23-CV-02387-RFL

**TABLE OF CONTENTS**

MEMORANDUM OF POINTS AND AUTHORITIES .................................................... 1

STATEMENT OF ISSUE TO BE DECIDED................................................................. 2

STATEMENT OF RELEVANT FACTS ........................................................................ 2

LEGAL STANDARD...................................................................................................... 5

ARGUMENT .................................................................................................................. 5

    I.    Section 230 Bars Plaintiff's Claims............................................................... 5

        A.    Plaintiff Offers No New Facts to Alter This Court's Holding That Section 230 Bars Plaintiff's Section 1595 Claim. ................................... 7

        B.    Plaintiff Cannot Use Product-Liability Claims to Avoid Section 230.................................................................................................. 8

    II.    Plaintiff Has Failed to Allege a Claim on Which Relief May Be Granted.......... 11

        A.    There Is No Actionable Violation of Section 1595. ................................ 12

        B.    Plaintiff Has Not Plausibly Alleged Causation (Counts 2–5)................... 15

            1.    The Complaint Does Not Adequately Plead But-For Causation................................................................................... 16

            2.    Meta's Conduct Was Not the Legal Cause of Plaintiff's Injuries. ......................................................................... 17

        C.    Because Instagram Is Not a Product, Plaintiff's Product Liability Claims Fail (Counts 2–5). ....................................................................... 19

        D.    Plaintiff Does Not and Cannot Allege That Meta Owed Her a Legal Duty (Counts 4–5). ....................................................................... 21

            1.    The Complaint Does Not Plead Facts Sufficient to Establish an Exception to the No-Duty-to-Protect Rule. ............. 22

            2.    The *Rowland* Factors Do Not Support a Duty. ........................... 24

CONCLUSION............................................................................................................... 25

i

# TABLE OF AUTHORITIES

## Cases

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)..................................................................................................5, 20

*Estate of B.H. v. Netflix, Inc.,*
    2022 WL 551701 (N.D. Cal. Jan. 12, 2022) ........................................................20, 25

*B.J. v. G6 Hosp., LLC,*
    2023 WL 3569979 (N.D. Cal. May 19, 2023) ............................................................13

*Barnes v. Yahoo!, Inc.,*
    570 F.3d 1096 (9th Cir. 2009), *as amended* (Sept. 28, 2009)..........................6, 8, 11

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)......................................................................................................5

*In re Breast Implant Prod. Liab. Litig.,*
    503 S.E.2d 445 (S.C. 1998) ........................................................................................21

*Brooks v. Eugene Burger Mgmt. Corp.,*
    264 Cal. Rptr. 756 (Cal. Ct. App. 1989)....................................................................19

*Brown v. USA Taekwondo,*
    483 P.3d 159 (Cal. 2021) ......................................................................................22, 24

*Calise v. Meta Platforms, Inc.,*
    ___ F.4th ___, 2024 WL 2826231 (9th Cir. 2024). ....................................................9

*Carafano v. Metrosplash.com, Inc.,*
    339 F.3d 1119 (9th Cir. 2003) ....................................................................................10

*Chanda v. Fed. Home Loans Corp.,*
    155 Cal. Rptr. 3d 693 (Cal. Ct. App. 2013)...............................................................18

*Coordinated Proceeding Special Title (Rule 3.400) Social Media Cases,*
    2024 WL 2980618 (Cal. Super. Ct. June 7, 2024)......................................................25

*Crouch v. Trinity Christian Ctr.,*
    253 Cal. Rptr. 3d 1 (Cal. Ct. App. 2019)...................................................................18

*Delfino v. Agilent Techs., Inc.,*
    52 Cal. Rptr. 3d 376 (Cal. Ct. App. 2006).................................................................25

*Doe #1 v. Red Roof Inns, Inc.,*
    21 F.4th 714 (11th Cir. 2021) .....................................................................................13

ii

# TABLE OF AUTHORITIES, *cont'd*

*Doe I v. Apple, Inc.*,
    96 F.4th 403 (D.C. Cir. 2024) ................................................................................14

*Doe No. 1 v. Uber Techs., Inc.*,
    294 Cal. Rptr. 3d 664 (Cal. Ct. App. 2022) ..............................................20, 22, 23

*Doe v. Internet Brands*,
    824 F.3d 846 (9th Cir. 2016) ...............................................................................8, 10

*Doe v. Reddit*,
    2021 WL 5860904 (C.D. Cal. Oct. 7, 2021),
    *affirmed on other grounds by Reddit*, 51 F.4th 1137 ..............................................13

*Doe v. Twitter, Inc.*,
    555 F. Supp. 3d 889 (N.D. Cal. 2021), *aff'd in part and rev'd in part on other
    grounds by* 2023 WL 3220912 (9th Cir. May 3, 2023) .......................................9, 11

*Does 1-6 v. Reddit, Inc.*,
    51 F.4th 1137 (9th Cir. 2022) ....................................................................6, 13, 14, 15

*Dyroff v. Ultimate Software Grp., Inc.*,
    934 F.3d 1093 (9th Cir. 2019) ..........................................................................7, 8, 24

*In re Facebook, Inc.*,
    625 S.W.3d 80 (Tex. 2021)........................................................................................20

*Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*,
    521 F.3d 1157 (9th Cir. 2008) (en banc) ..............................................................6, 8, 11

*Fed. Agency of News LLC v. Facebook, Inc.*,
    395 F. Supp. 3d 1295 (N.D. Cal. 2019) .....................................................................6

*Fields v. Twitter, Inc.*,
    881 F.3d 739 (9th Cir. 2018) ....................................................................................17

*Geiss v. Weinstein Co. Holdings LLC*,
    383 F. Supp. 3d 156 (S.D.N.Y. 2019)...........................................................12, 14, 15

*In re Gilead Scis. Sec. Litig.*,
    536 F.3d 1049 (9th Cir. 2008) ....................................................................................5

*Gonzalez v. Derrington*,
    363 P.2d 1 (Cal. 1961) ..............................................................................................18

*Green v. ADT, LLC*,
    2016 WL 3208483 (N.D. Cal. June 10, 2016)..........................................................20

iii

**TABLE OF AUTHORITIES, *cont'd***

*Hegyes v. Unjian Enters., Inc.*,
  234 Cal. App. 3d 1103 (1991) ..................................................................................................21

*HomeAway.com, Inc. v. City of Santa Monica*,
  918 F.3d 676 (9th Cir. 2019) ...............................................................................................9, 10

*Huitt v. S. Cal. Gas Co.*,
  116 Cal. Rptr. 3d 453 (Cal. Ct. App. 2010) ...........................................................................17

*J.B. v. G6 Hosp., LLC*,
  2020 WL 4901196 (N.D. Cal. Aug. 20, 2020), *abrogated in part on other
  grounds by Reddit*, 51 F.4th 1137 ........................................................................................13

*Jackson v. Airbnb, Inc.*,
  639 F. Supp. 3d 994 (C.D. Cal. 2022) ..............................................................................20, 22

*Jacobs v. Meta Platforms, Inc.*,
  2023 WL 2655586 (Cal. Super. Ct. Mar. 10, 2023) ...............................................................20

*James v. Meow Media, Inc.*,
  300 F.3d 683 (6th Cir. 2002) ..................................................................................................21

*Johnson v. U.S. Steel Corp.*,
  192 Cal. Rptr. 3d 158 (Cal. Ct. App. 2015) ...........................................................................19

*Kimzey v. Yelp! Inc.*,
  836 F.3d 1263 (9th Cir. 2016) ..................................................................................................8

*Lama v. Meta Platforms, Inc.*,
  2024 WL 2021896 (N.D.N.Y. May 6, 2024) ..........................................................................10

*Lemmon v. Snap, Inc.*,
  995 F.3d 1085 (9th Cir. 2021) ..................................................................................................9

*McCollum v. CBS, Inc.*,
  249 Cal. Rptr. 187 (Cal. Ct. App. 1988) ...........................................................................24, 25

*McIndoe v. Huntington Ingalls Inc.*,
  817 F.3d 1170 (9th Cir. 2016) .................................................................................................19

*Merrill v. Navegar, Inc.*,
  26 Cal. 4th 465 (2001) ............................................................................................................19

*Merritt v. Countrywide Fin. Corp.*,
  2015 WL 5542992 (N.D. Cal. Sept. 17, 2015),
  *aff'd*, 783 F. App'x 717 (9th Cir. 2019)................................................................................19

iv

**TABLE OF AUTHORITIES, *cont'd***

*Modisette v. Apple Inc.*,
241 Cal. Rptr. 3d 209 (Cal. Ct. App. 2018)................................................................16, 17, 24

*NetChoice, LLC v. Att'y Gen., Fla.*,
34 F.4th 1196 (11th Cir. 2022), *cert. granted in part sub nom.*
*Moody v. NetChoice, LLC*, 144 S. Ct. 478 (2023).......................................................21

*Noble v. Weinstein*,
335 F. Supp. 3d 504 (S.D.N.Y. 2018)........................................................................13, 15

*Pierson v. Sharp Mem'l Hosp., Inc.*,
264 Cal. Rptr. 673 (Cal. Ct. App. 1989)....................................................................20, 21

*Regents of Univ. of Cal. v. Superior Court*,
413 P.3d 656 (Cal. 2018).............................................................................................23, 24

*Rowland v. Christian*,
443 P.2d 561 (Cal. 1968).............................................................................................22, 24

*Sakiyama v. AMF Bowling Ctrs., Inc.*,
1 Cal. Rptr. 3d 762 (Cal. Ct. App. 2003)........................................................................23

*Salameh v. Tarsadia Hotel*,
726 F.3d 1124 (9th Cir. 2013) .............................................................................................5

*Seismic Reservoir 2020, Inc. v. Paulsson*,
785 F.3d 330 (9th Cir. 2015) ..............................................................................................5

*Sharufa v. Festival Fun Parks, LLC*,
263 Cal. Rptr. 3d 112 (Cal. Ct. App. 2020)....................................................................21

*In re Social Media Adolescent Addiction/Personal Injury Product Liability Lit.*,
___ F. Supp. 3d ___, 2023 WL 7524912 (N.D. Cal. Nov. 14, 2023)..................................8, 19

*Social Media Cases*, 2023 WL 6847378 (Cal. Super. Ct. Oct. 13, 2023). ........................19, 20, 21

*Steinle v. United States*,
17 F.4th 819 (9th Cir. 2021) ...........................................................................16, 17, 18

*Twitter, Inc. v. Taamneh*,
598 U.S. 471 (2023)..........................................................................................................25

*Vasilenko v. Grace Fam. Church*,
404 P.3d 1196 (Cal. 2017)................................................................................................16

*Weirum v. RKO Gen., Inc.*,
539 P.2d 36 (Cal. 1975).....................................................................................................22

v

**TABLE OF AUTHORITIES,** *cont'd*

*Winter v. G.P. Putnam's Sons,*
938 F.2d 1033 (9th Cir. 1991) ................................................................................21

*Young v. Facebook, Inc.,*
2010 WL 4269304 (N.D. Cal. Oct. 25, 2010) ........................................................24

*Ziencik v. Snap, Inc.,*
2023 WL 2638314 (C.D. Cal. Feb. 3, 2023) ..........................................................20

**Statutes**

18 U.S.C. § 1591 .......................................................................................................14

18 U.S.C. § 1595 .............................................................................................4, 12, 14

47 U.S.C. §230 ........................................................................................................6, 8

**Rules**

Fed. R. Civ. P. 12 .....................................................................................................2, 5

**Treatises**

Restatement (Second) of Torts (1965) ......................................................................18

vi

## **MEMORANDUM OF POINTS AND AUTHORITIES**

As in her prior complaints, Plaintiff K.B. alleges that she was a victim of sex trafficking committed by a perpetrator—identified as R.L.—who allegedly contacted her on the social-media service Instagram. He purportedly began communicating with her through messages and posts, eventually persuaded her to meet him in person, and then lured her into sex trafficking through false promises. Plaintiff has not sued R.L., who is incarcerated for his crimes, but instead has sued Meta Platforms, Inc., which operates the Instagram social-media service. Plaintiff, who was an adult at all relevant times, alleges that Meta should be liable for her injuries because R.L. used Instagram to contact and groom her, and also to post images of her that purportedly "publicly and obviously" advertised her for sex. Dkt. 102, ¶74.

This Court dismissed Plaintiff's prior complaint on the ground that it was barred by section 230 of the Communications Decency Act, which protects a service like Meta that played no affirmative part in Plaintiff's injuries but merely hosted third-party content. Dkt. 96. The Court rejected both of Plaintiff's theories of liability based on section 230. The Court concluded that Plaintiff's breeding ground theory would improperly "hold Meta liable for failing to remove traffickers' grooming messages and posts advertising their victims for sex." Dkt. 96 at 2. Likewise, Plaintiff's theory that Meta "connects" traffickers and victims is barred by section 230. *Id.* at 3-4.

Plaintiff's fourth and operative pleading fails to cure those problems. The claims alleged in the Third Amended Complaint (the "complaint") are barred—yet again—by section 230 because they would treat Meta as a publisher or speaker of the harmful third-party content posted or transmitted by R.L. The complaint also fails to state a claim. It does not identify any benefit

1

that Meta knowingly received from Plaintiff's trafficking, or any way in which Meta knowingly participated in a sex-trafficking venture—two necessary elements of her claim. And the newly-added state-law claims fail because Meta's conduct did not cause Plaintiff's injuries; the product-liability claims incorrectly assume that Instagram is a product; and the negligence claims fail to plead facts sufficient to establish a duty under California law. The Court should dismiss the complaint with prejudice.

## STATEMENT OF ISSUE TO BE DECIDED

Should Plaintiff's complaint be dismissed with prejudice because Plaintiff's claims are barred by section 230 of the Communications Decency Act and because the complaint fails to state a claim after multiple opportunities to plead an actionable claim?

## STATEMENT OF RELEVANT FACTS[1]

Meta provides online social-media services, including Instagram. Instagram allows users to post photographs and connect and communicate with one another. Dkt. 102 ¶29. Plaintiff, who does not allege she was a minor at any relevant time, created an Instagram account and then received "messages" and "posted statements" from R.L., a third party criminal. *Id.* ¶¶71-72. At R.L.'s suggestion, they later met in person. *Id.* ¶¶72-73.

According to the complaint, R.L. began trafficking Plaintiff for sex after they met in person. Dkt. 102 ¶73. He "publicly posted photos" of her on Instagram accompanied by various symbols that she alleges were "code" for advertising her for sex. *Id.* ¶¶74, 76. Between July 2017 and July 2018, when R.L. received messages from third-party "sex buyers," he forced Plaintiff to

---

[1] Consistent with Rule 12(b), Meta states the operative facts as pleaded in Plaintiff's Third Amended Complaint, Dkt. 102. Meta does not admit the truth of any such allegation.

2

perform sex acts with these buyers for money. *Id.* ¶¶80, 83. Although Plaintiff generally asserts that Meta benefitted—in an unspecified way—from Plaintiff's trafficking, *id.* at ¶115, she does not allege that Meta was paid by R.L. for any of the allegedly "code[d]" posts or received any other benefit from R.L. related to her trafficking.

As with prior iterations, Plaintiff's complaint contains a host of generalized allegations—that most sex trafficking "occurs online" and that traffickers operate as "unverified" users on "social media platforms like Facebook and Instagram." Dkt. 102 ¶¶27-28. According to the complaint, Meta provides an "unrestricted" platform and knows that sex trafficking occurs on Instagram, but has made only "nominal" efforts to combat it. *Id.* ¶¶36, 38-39. Plaintiff says Meta could have done more to add design features that "would have prevented unsuspecting users from being groomed, recruited, and sold into sex trafficking," *id.* ¶44, including age and identity verification mechanisms, *id.* ¶¶45-52, tools to allow users to report sex trafficking, *see id.* ¶95, and warnings about the risk of sex trafficking, *id.* ¶¶55-57. Meta's failure to make these changes to Instagram, Plaintiff says, has "create[d] connections between sex traffickers and their victims that otherwise would never have existed." *Id.* ¶65.

Notably, the complaint fails to connect any of these generalized allegations to *Plaintiff's* trafficking—and some of the allegations, like the claimed absence of age-verification features—have no potential bearing on her claims. Plaintiff claims that Instagram serves as a "breeding ground," "hub," or "marketplace" for illicit content and failed to prevent alleged sex traffickers from creating fake accounts on the service. *E.g.*, Dkt. 102 ¶¶1, 7, 14, 92, 94. But the complaint does not articulate how any fake account by R.L. would have caused Plaintiff's alleged trafficking. Plaintiff does not plead that R.L.'s false online persona was that of someone she knew.

3

DEFENDANT META PLATFORMS, INC.'S NOTICE OF MOTION & RULE 12(B)(6) MOTION TO DISMISS
THIRD AMENDED COMPLAINT
CASE NO.: 23-CV-02387-RFL

She says the opposite—admitting that when R.L. contacted Plaintiff on Instagram he was "a man . . . previously unknown to her" who "had no relationship to her." *Id.* ¶69. She also claims that Meta sells advertising services allowing advertisers to advertise on Instagram, *see id.* ¶66, but never asserts that R.L. purchased (or even used) these advertising services or that Meta otherwise earned any revenue from him. Nor does Plaintiff identify any specific way that Meta itself somehow facilitated a connection between her and R.L.

Plaintiff likewise does not allege or suggest that Meta created, edited, approved, or promoted R.L.'s public posts. Rather, Meta allegedly views the interactions and content of its users with a "blind eye." Dkt. 102 ¶115. Plaintiff's chief complaint is that Meta allegedly failed to prevent R.L.'s harmful third-party content. *Id.* ¶92. But Plaintiff does not allege—nor could she—that Meta had a duty to monitor all messages and posts communicated through Instagram—or otherwise to monitor all users' content or communications with each other.

Plaintiff alleges that R.L., after facing federal charges in Texas, was ultimately convicted and sentenced to 40 years' imprisonment. Dkt. 102 ¶86. Thereafter, Plaintiff sued Meta, initially bringing a federal claim against Meta under 18 U.S.C. §1595, the federal civil sex-trafficking statute. Dkt. 13.[2] This Court granted Meta's motion for judgment on the pleadings, Dkt. 84, holding that section 230 barred Plaintiff's claim, Dkt. 96. Based on Plaintiff's counsel's representations at oral argument, the Court granted Plaintiff leave to amend. *Id.* In her fourth and

---

[2] Plaintiff initially filed her case in Texas state court against one defendant, Backpage.com, LLC. Dkt. 1-8 at 2-13. That same day, Plaintiff amended her pleading to add Meta as a defendant. *Id.* at 14-30. Meta removed the case on diversity grounds to the federal district court for the Southern District of Texas and moved to dismiss. Dkts. 1, 12. Rather than respond to Meta's motion, Plaintiff filed a second amended complaint, bringing only a federal section 1595 claim. Dkt. 13. Thereafter, Meta transferred the case to this District. Dkt. 55.

4

DEFENDANT META PLATFORMS, INC.'S NOTICE OF MOTION & RULE 12(B)(6) MOTION TO DISMISS THIRD AMENDED COMPLAINT
CASE NO.: 23-CV-02387-RFL

operative pleading, Plaintiff asserts five claims. Dkt. 102. She realleges her section 1595 claim (Count 1) and adds four state-law claims—specifically, strict liability and negligence for Meta's design of Instagram (Counts 2 & 4), and strict liability and negligence for Meta's alleged failure to warn users of the dangers of sex trafficking on Instagram (Counts 3 & 5). Meta now moves to dismiss Plaintiff's claims with prejudice, as Plaintiff has had multiple opportunities to state a viable claim.

## LEGAL STANDARD

To survive Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals" of the elements of a claim, supported by "mere conclusory statements," do not suffice. *Id.* Nor must the Court accept "a legal conclusion couched as a factual allegation," *id.*, or allegations based on "unwarranted deductions of fact[ ] or unreasonable inferences," *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). Claims also may be dismissed based on a dispositive issue of law. *Seismic Reservoir 2020, Inc. v. Paulsson*, 785 F.3d 330, 335 (9th Cir. 2015). Discretion to grant dismissal with prejudice is "particularly broad" when—as in this case—prior leave to amend has been granted. *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013).

## ARGUMENT

**I.      Section 230 Bars Plaintiff's Claims.**

The Court already ruled that section 230 bars Plaintiff's federal claim, *see* Dkt. 96, and her new state-law strict liability and negligence claims fail for the same reason. Plaintiff's operative complaint—her *fourth* attempt to plead a viable case—offers no basis to depart from

5

the Court's prior ruling. Section 230 requires dismissal.

Congress enacted section 230 precisely to protect defendants like Meta not only "from ultimate liability," but also "from having to fight costly and protracted legal battles." *Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1175 (9th Cir. 2008) (en banc); *see also* 47 U.S.C. §230(e)(3) (providing that no state-law claim "may be brought" and "no liability may be imposed" in a way that violates section 230). To qualify for section 230's "robust" protections from claims based on materials posted by someone else, *Does 1-6 v. Reddit, Inc.*, 51 F.4th 1137, 1140 (9th Cir. 2022), a defendant must be "(1) a provider or user of an interactive computer service (2) whom a plaintiff seeks to treat . . . as a publisher or speaker (3) of information provided by another information content provider." *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1100-01 (9th Cir. 2009), *as amended* (Sept. 28, 2009) (footnote omitted); *see* 47 U.S.C. §230(c)(1); *accord* Dkt. 96 at 2.

All of Plaintiff's claims against Meta easily meet these criteria: Meta is unquestionably an interactive computer service provider because it provides a website that enables computer-server access to users. *See* Dkt. 84 at 6 (citing *Fed. Agency of News LLC v. Facebook, Inc.*, 395 F. Supp. 3d 1295, 1305 (N.D. Cal. 2019) (collecting cases)). Plaintiff hasn't disputed that point. *See generally* Dkt. 87 (asserting no argument that Meta is not an interactive computer service provider under section 230). Likewise, Plaintiff's claims treat Meta as the publisher of online content created by a third-party user—her alleged trafficker, R.L., who allegedly used Instagram to communicate with her. All of her claims and liability theories are premised on content developed by R.L. Plaintiff's claims would impose a duty upon Meta to monitor and remove "messages," "posted statements," "public posts," "photos," "emojis," and "emoticons," *see* Dkt.

6

102 ¶¶71-72, 74-76—quintessential third-party content.

A.    **Plaintiff Offers No New Facts to Alter This Court's Holding That Section 230 Bars Plaintiff's Section 1595 Claim.**

This Court already ruled that Plaintiff's "breeding ground" and "connection" theories are foreclosed by Ninth Circuit precedent: Meta cannot be held liable "for failing to remove traffickers' grooming messages and posts advertising their victims for sex" in part because there were—and are—"no allegations that Meta, rather than third parties, created and developed such content." Dkt. 96 at 2. And Plaintiff "cannot plead around Section 230 immunity by framing" her claim as one involving Meta's connection algorithms rather than the user-generated content that those algorithms allegedly facilitate. *See id*. at 3 (applying *Dyroff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1098 (9th Cir. 2019)). As this Court already held, section 230 bars even claims based on allegations, like those alluded to in Plaintiff's complaint, that a defendant website "used algorithms to "'steer[] users to' and recommend groups 'dedicated to the sale and use of narcotics.'" Dkt. 96 at 4 (quoting *Dyroff*, 934 F.3d at 1095, 1098).

Nothing in Plaintiff's new complaint alters this analysis. The gravamen of Plaintiff's pleadings remains that she was harmed by online content generated and posted entirely by third parties—the criminal "R.L." and alleged "sex buyers." Dkt. 102 ¶¶71-72, 74, 80; Dkt. 84 at 9. There is still no plausible theory under which this challenged content could be attributable to Meta. Dkt. 84 at 7. And Plaintiff does not allege that Meta affirmatively connected Plaintiff and R.L. *See generally* Dkt. 102 ¶¶63-67; *see also* Dkt. 84 at 11.

At best, Plaintiff simply piles *new* conclusory allegations on top of existing ones. She asserts that Meta purportedly "knowingly benefitted from facilitating a trafficking hub," has a "business model [of] 'connections,'" and makes connections leading to the sale of victims "like

7

Jane Doe." Dkt. 102 ¶¶1, 63. But these generalized allegations—offered with no actual connection to Plaintiff herself—cannot avoid section 230. Dkt. 84 at 17. And, in any event, connections such as these " 'are tools meant to facilitate the communication and content of others,' and 'not content in and of themselves.'" Dkt. 96 at 3 (quoting *Dyroff*, 934 F.3d at 1098).

As also discussed in Meta's prior briefing, the Allow Victims to Fight Online Sex Trafficking Act ("FOSTA") amendments to section 230 do not exempt Plaintiff's federal claim from the scope of section 230. *See* Dkt. 84 at 12-14.

**B.    Plaintiff Cannot Use Product-Liability Claims to Avoid Section 230**

It is black-letter law that plaintiffs may not use "artful" pleading to avoid section 230. *Kimzey v. Yelp! Inc.*, 836 F.3d 1263, 1266 (9th Cir. 2016). Despite Plaintiff's most recent attempts to recast her claims in the guise of failure to warn and defective design, "what matters is whether the cause of action inherently requires the court to treat the defendant as the 'publisher or speaker' of content provided by another." *Barnes*, 570 F.3d at 1101-02. Section 230 speaks in categorical terms—protecting websites from *all* claims, however creatively styled, that "trea[t]" the website as the "publisher or speaker of" third-party content. 47 U.S.C. §230(c)(1); *cf. Roommates.com*, 521 F.3d at 1174 (when applying section 230, even "close cases . . . must be resolved in favor of immunity").

In applying section 230, courts consider whether "the defendant's alleged duty to the plaintiff could 'have been satisfied without changes to the content posted by the website's users ***and*** without conducting a detailed investigation.'" *In re Social Media Adolescent Addiction/Personal Injury Product Liability Lit.* ("*Social Media Lit.*"), ___ F. Supp. 3d ___, 2023 WL 7524912, at *12 (N.D. Cal. Nov. 14, 2023) (emphasis added) (quoting *Doe v. Internet*

8

*Brands*, 824 F.3d 846, 851 (9th Cir. 2016)). And section 230 clearly bars claims that would impose on internet companies a duty to monitor third-party content. *See HomeAway.com, Inc. v. City of Santa Monica*, 918 F.3d 676, 682 (9th Cir. 2019).[3]

Plaintiff cannot evade Section 230 by reframing her challenges to Meta's publishing activity as "product[ ]-liability" claims. Section 230 bars product-liability claims when, as here, "the nature of the alleged design flaw" and "the harm that is alleged to flow from that flaw" "directly relate[ ] to the posting of third-party content." *Doe v. Twitter, Inc.*, 555 F. Supp. 3d 889, 930 (N.D. Cal. 2021), *aff'd in part and rev'd in part on other grounds by* 2023 WL 3220912 (9th Cir. May 3, 2023). Beyond the fact—discussed below—that Instagram is not a "product" under applicable law, Plaintiff's product-liability claims are plainly barred on this basis.

*First*, Plaintiff's failure-to-warn claims (Counts 3 and 5) would improperly impose on Meta a duty to monitor content. Plaintiff complains that Meta failed to "warn about the dangers of sex trafficking on its Instagram product" and the "telltale signs of human trafficking." Dkt. 102 ¶15. But she never claims these are dangers intrinsic to the social-media service or its functionalities. *Contra Lemmon v. Snap, Inc.*, 995 F.3d 1085, 1092 (9th Cir. 2021) (claims that the Snapchat speed filter was intrinsically and foreseeably dangerous—and that involved no third-party content—fell outside section 230). She does not allege that "it was [a] defect *in Instagram*

---

[3] The Ninth Circuit in *Calise v. Meta Platforms, Inc.* recently confirmed the broad application of section 230. ___ F.4th ___, 2024 WL 2826231 (9th Cir. 2024). The court held that section 230 barred all the plaintiffs' state-law claims except certain contract-based theories. *Id.* at *2. In passing, the court discussed the duty-to-warn claims in *Internet Brands* in the context of noting that not all claims against social-media services implicate section 230. *Id.* at *6. The court did not actually rule on any duty-to-warn claims in *Calise*, as no such claims were alleged. *Calise* confirms the application of section 230 to Plaintiff's claims here, all of which turn on a duty to monitor third-party content.

9

DEFENDANT META PLATFORMS, INC.'S NOTICE OF MOTION & RULE 12(B)(6) MOTION TO DISMISS
THIRD AMENDED COMPLAINT
CASE NO.: 23-CV-02387-RFL

that alone caused [the] alleged injuries"; instead, "the alleged harm occurred *as a result of* content posted by third-party users on the app." *Lama v. Meta Platforms, Inc.*, 2024 WL 2021896, at *6 (N.D.N.Y. May 6, 2024) (emphases added).

The purported "dangers" and "signs" of which Plaintiff complains all arise from third-party content that Meta allegedly should have monitored, removed, or disallowed: a "fake profile," "direct messages," "publicly posted photos," and "emoticons" and "emojis" that are supposed "indications of the selling of sex and sex trafficking" and "well-known code conveying that the person is being sold for sex." Dkt. 102 ¶¶71-72, 74, 76, 94. Section 230 plainly protects internet service providers from any duty to monitor or remove such content. *See HomeAway.com*, 918 F.3d at 682. And, in any event, Plaintiff offers no means (content-independent or otherwise) by which Meta could have learned that R.L. was a bad actor before he allegedly contacted her on Instagram. *Contra Internet Brands*, 824 F.3d at 851, 853 (failure to warn claim not subject to section 230 because defendant website learned of specific bad actors from sources separate from the website, and the duty to warn of such bad actors could be fulfilled without "monitor[ing] internal communications that might send up red flags about sexual predators").

***Second***, Plaintiff's design-defect claims (Counts 2 and 4) are no different. The accounts and profiles that users create on social-media services like Instagram are themselves third-party content as to which section 230 protects Meta from liability. *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1125 (9th Cir. 2003). Plaintiff's design-defect claims are precluded by this well-established law, as her claims resting on supposed inadequate identification-verification measures would require Meta to monitor and remove users' profiles. They likewise would dictate to whom Meta may publish content—in plain violation of section 230.

10

The same conclusion applies to Plaintiff's theory that Meta should have prevented users from creating fake Instagram accounts. This theory would impose on Meta a twofold duty: (1) to ensure that the contents of a new user profile align with the user's government-issued identification and (2) to remove any profiles that do not. But content moderation and removal are things *publishers* and *speakers* do. *Barnes*, 570 F.3d at 1103 ("removal of the indecent profiles . . . posted on [defendant's] website . . . is something publishers do"); *Roommates.com*, 521 F.3d at 1170-71 ("[A]ny activity that can be boiled down to deciding whether to exclude material that third parties seek to post online is perforce immune under section 230."). And "[t]o meet the obligation Plaintiff[ ] seek[s] to impose on [Meta], [Meta] would have to alter the content posted by its users"—a liability theory that section 230 bars. *Twitter*, 555 F. Supp. 3d at 930 (applying section 230 to dismiss product-liability claims alleging social-media service did not "prevent users suspended by [the service] for disseminating [illicit content] from opening new accounts under different names").

Plaintiff's final design-defect theory—inadequate reporting mechanisms—also is barred by section 230. Plaintiff demands that Meta "take appropriate remedial action" on receipt of a report. Dkt. 102 ¶133. But section 230 was "enacted to protect websites against the evil of liability for failure to remove offensive content," *Roommates.com*, 521 F.3d at 1174—liability that Plaintiff would impose on Meta here. *See Twitter*, 555 F. Supp. 3d at 930 (applying section 230 to dismiss product-liability claims that social-media service was not "designed to enable users to easily report [illicit content]").

**II.    Plaintiff Has Failed to Allege a Claim on Which Relief May Be Granted.**

Even if section 230 did not bar Plaintiff's claims, dismissal would be warranted because

11

the claims fail as a matter of law. Plaintiff fails to plead her federal section 1595 claim because she fails to allege that Meta knowingly benefited from participation in a venture with R.L. Plaintiff's state law claims each fail for a host of reasons. First, she does not plead that Meta proximately or legally caused her complained-of injuries. And although each of Plaintiff's state law claims necessitates the existence of a product, Plaintiff fails to plead facts sufficient to establish the threshold element—that Instagram is a product. Finally, as to her negligence claims, Plaintiff articulates no cognizable duty of care owed to her by Meta.

### A.    There Is No Actionable Violation of Section 1595.

As shown in Meta's Rule 12(c) briefing, Dkts. 84, 88, Plaintiff's complaint also fails to state a section 1595 claim against Meta. To plead a section 1595 claim, a plaintiff must plausibly allege that the defendant (1) "knowingly benefit[ed], financially or by receiving anything of value" (2) "from participation in a venture," which (3) "that person knew or should have known ha[d] engaged in an act in violation of" section 1591(a). 18 U.S.C. §1595(a). Here, Plaintiff alleges no facts sufficient to establish a relevant venture, or that Meta knowingly participated in or benefitted from such a venture.

Plaintiff's section 1595 claim fails at the outset, as she does not (and cannot) allege that Meta participated in a trafficking venture with R.L. Section 1595 "participation" requires a plaintiff to plead "participation *in a sex-trafficking venture*, not participation in other activities engaged in by the sex traffickers that do not further the sex-trafficking aspect of their venture." *Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156, 169 (S.D.N.Y. 2019) (emphasis in

DEFENDANT META PLATFORMS, INC.'S NOTICE OF MOTION & RULE 12(B)(6) MOTION TO DISMISS THIRD AMENDED COMPLAINT
CASE NO.: 23-CV-02387-RFL

original).[4] And the complaint "must allege some 'specific conduct [by the defendant] that furthered the sex trafficking venture'" and was "'undertaken with knowledge' of the venture." *Reddit*, 51 F.4th at 1145 (quoting *Noble v. Weinstein*, 335 F. Supp. 3d 504, 524 (S.D.N.Y. 2018)).

Despite multiple chances to amend, Plaintiff does not plead, as she must, that Meta and R.L. "took part in a common undertaking or enterprise involving risk and potential profit," *B.J. v. G6 Hosp., LLC*, 2023 WL 3569979, at *4 (N.D. Cal. May 19, 2023) (quoting *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 725 (11th Cir. 2021)), or engaged in a "continuous business relationship such that it would appear that the trafficker and the defendant have established a pattern of conduct or could be said to have a tacit agreement," *J.B. v. G6 Hosp., LLC*, 2020 WL 4901196, at *9 (N.D. Cal. Aug. 20, 2020) (cleaned up) (collecting cases), *abrogated in part on other grounds by Reddit*, 51 F.4th 1137.

But-for allegations, which are all the complaint contains against Meta, fail to satisfy section 1595's participation element. *J.B.*, 2020 WL 4901196, at *9. Indeed, even "enabling" illicit trafficking activity and "making it easier" for bad actors to connect with other bad actors—without more—are legally insufficient to plead participation in a venture under section 1595. *Doe v. Reddit*, 2021 WL 5860904, at *8 (C.D. Cal. Oct. 7, 2021), *affirmed on other grounds by Reddit*, 51 F.4th 1137. When the defendant is "not accused of having made a business deal with the alleged traffickers—and did not have any monetary relationship with those traffickers—the standard for stating a claim under §1595 has not be[en] satisfied." *Id.* The D.C. Circuit recently confirmed this reading, holding that pleading a "venture" under section 1595 requires something

---

[4] The Ninth Circuit in *Reddit*, 51 F.4th at 1145, cited both *Geiss* and *Noble* with approval and quoted from them on this point. Both cases evaluated beneficiary liability under section 1595.

beyond "an ordinary buyer-seller transaction." *Doe I v. Apple, Inc.*, 96 F.4th 403, 415 (D.C. Cir. 2024) (tech companies not liable for section 1595 claim because they "own no interest in their suppliers" and do not "share in the suppliers' profits and risks"). A plaintiff must allege a "shared enterprise between the [defendant] [c]ompanies and the [criminal traffickers]." *Id.* There are no such allegations here. Plaintiff merely alleges that Meta provided R.L. with the same social-media service it offers to all of its users—facts that fall far short of the section 1595 standard. Meta in no way participated in R.L.'s trafficking enterprise.

Nor does Plaintiff plead that Meta knowingly benefitted from its non-existent participation in R.L.'s trafficking venture. The phrase "knowingly benefit[ed]" appears in both the criminal and civil sections of the federal sex-trafficking statute. *Compare* 18 U.S.C. §1591(a)(2) *with* 18 U.S.C. §1595(a)(2). Accordingly, courts have interpreted the phrases identically, to require pleading that the beneficiary defendant had "actual knowledge and a 'causal relationship between affirmative conduct furthering the sex-trafficking venture and receipt of a benefit.'" *Reddit*, 51 F.4th at 1145 (quoting *Geiss*, 383 F. Supp. 3d at 169).[5] The key question is whether the trafficker "provided any of those benefits to [the beneficiary defendant] *because of* [the defendant's] facilitation of [the trafficker's] sexual misconduct." *Geiss*, 383 F. Supp. 3d at 169.

Plaintiff alleged no such connection between R.L.'s trafficking of Plaintiff (whether through Instagram or upon meeting in person and at hotels, *e.g.*, Dkt. 102 ¶¶73, 75, 81) and "the

---

[5] Although the Ninth Circuit has not expressly defined the "knowingly benefit" standard under section 1595, it quoted *Geiss* approvingly in *Reddit*. *Geiss* held that the "knowingly benefit" standard from section 1591 applies to the "knowingly benefit" standard from section 1595 because the identical phrase is used in both the criminal and civil sections of the statute. 383 F. Supp. 3d at 169 n.5.

14

revenue that [Meta] generates, other than the fact that [Meta] makes money from [the] advertising on [its social-media service]." *See Reddit*, 51 F.4th at 1145-46; Dkt. 102 ¶¶66, 109(g). These facts are far less compelling than those held insufficient in *Geiss* and *Noble* to state a section 1595 beneficiary liability claim. In *Geiss*, the beneficiary defendants directly benefited from revenue that the sex-trafficker Harvey Weinstein's "movies and influence generated," but not from their facilitation of his sexual misconduct. 383 F. Supp. 3d at 169. Likewise, in *Noble*, the court rejected as insufficient allegations that a beneficiary defendant benefitted from Weinstein's general business activities—rather than his particular trafficking conduct. 335 F. Supp. 3d at 524.

Plaintiff's allegations are even weaker here: Unlike in *Geiss* and *Noble*, she does not allege that Meta worked for R.L. or that R.L. purchased advertising services from Meta to use in his trafficking venture. Plaintiff never alleges that Meta received any money from R.L. Indeed, she does not plead that he was giving money to Meta at all—as Instagram is a free social-media service.

At most, Plaintiff asserts an extremely attenuated, passive benefit over several steps: R.L. created an account. Meta did not remove it. It is good for Meta to have users with accounts on Instagram. And on the whole, more users may lead to additional ad revenue. *See generally* Dkt. 102 ¶109(n). But Plaintiff never makes the requisite connections between these purported "benefits" and *her* trafficking or R.L.'s trafficking venture. Plaintiff's limited new allegations do not remedy these infirmities; they simply bolster conclusory assertions with the same insufficient allegations.

**B.    Plaintiff Has Not Plausibly Alleged Causation (Counts 2–5).**

Plaintiff's state-law claims fail as a matter of law as well. Despite ample opportunity to

15

fix the deficiencies the Court noted, Plaintiff's latest complaint does not allege facts sufficient to establish that any action by Meta "proximate[ly] or legal[ly] cause[d]" the injury. *Steinle v. United States*, 17 F.4th 819, 822 (9th Cir. 2021) (citing *Vasilenko v. Grace Fam. Church*, 404 P.3d 1196, 1198 (Cal. 2017)). Plaintiff fails to plead, as she must, both (1) "but-for causation"—that Meta committed a "necessary antecedent" of Plaintiff's injuries, *Modisette v. Apple Inc.*, 241 Cal. Rptr. 3d 209, 224 (Cal. Ct. App. 2018); and (2) proximate causation—the necessary "degree of connection between the conduct and the injury," *Steinle*, 17 F.4th at 822.

### 1. The Complaint Does Not Adequately Plead But-For Causation.

Plaintiff's but-for causation allegations fail at the threshold. The complaint alleges no facts showing that Meta's supposed design defects were a factual cause of her harms. None of the three alleged design defects—inadequate age and identity verification mechanisms to protect against fake accounts, lack of reporting tools, and lack of warning about the risks of sex trafficking, *see, e.g.*, Dkt. 102 ¶¶43, 131-33, 145, 164—was a but-for cause of Plaintiff's injuries. The complaint confirms that not one of these purported deficiencies was a "necessary antecedent" of her injuries. Indeed, Plaintiff never alleges that R.L. lied about his age or falsely represented himself as someone she knew; her only allegation is that he was "previously unknown to her" when he first contacted her on Instagram. *Id.* ¶69. So despite Plaintiff's generalized allegations that traffickers often "masquerad[e] as children," *id.* ¶50, and connect with their target's acquaintances to gain the target's trust, *id.* ¶38, Plaintiff never connects such allegations to R.L. Nor is there any allegation that R.L. contacted her when she was a minor; Plaintiff was an adult at all relevant times.

As for the lack of reporting tools, Plaintiff only offers the perfunctory assertion that

16

"R.L.'s trafficking scheme would have been reported" to Meta. Dkt. 102 ¶¶101, 146, 192. Nowhere does she say who (including herself) would have done that reporting. Nor does she plead that any such reporting would have occurred *before* R.L. contacted her on Instagram. Plaintiff's allegations fail to establish that the lack of a reporting mechanism led to her injuries. So too with Meta's alleged failure to warn about a generalized risk of trafficking: Plaintiff alleges that she "would have heeded" any warnings about the "dangers of trafficking on [Meta's] platforms," but she in no way explains how she would have used them to avoid being trafficked. *Id.* ¶¶167, 212; *see Huitt v. S. Cal. Gas Co.*, 116 Cal. Rptr. 3d 453, 468 (Cal. Ct. App. 2010) ("[A] defendant is not liable to a plaintiff if the injury would have occurred even if the defendant had issued adequate warnings.").

### 2.    Meta's Conduct Was Not the Legal Cause of Plaintiff's Injuries.

Even if the complaint survives a but-for causation analysis, Plaintiff hasn't pleaded facts sufficient to establish proximate cause. Because the "purported [but-for] causes of an event may be traced back to the dawn of humanity," the law imposes limitations on liability beyond simple causality. *Modisette*, 30 Cal. App. 5th at 153. Courts must assess the "degree of connection" between the alleged conduct and the injury and the "various considerations of policy" that limit legal responsibility "to those causes which are so close to the result, or of such significance as causes, that the law is justified in making the defendant pay." *Id.*; *see also Fields v. Twitter, Inc.*, 881 F.3d 739, 749 (9th Cir. 2018) (holding that, for purposes of the Anti-Terrorism Act's proximate cause requirement, a plaintiff "must show at least some *direct relationship* between the injuries that he or she suffered and the defendant's acts" (emphasis added)). Generally, "criminal and negligent actions" by third parties eliminate proximate cause. *Steinle*, 17 F.4th at

17

822-24; *see also Gonzalez v. Derrington*, 363 P.2d 1, 2-3 (Cal. 1961) (intentional third-party misconduct was "an independent, intervenning [sic] cause"). And a superseding cause breaks the causal chain "when the [defendant] actor's conduct creates a situation which is utilized by a third person to inflict intentional harm upon another." Restatement (Second) of Torts §448, cmt. a (1965); *see Crouch v. Trinity Christian Ctr.*, 253 Cal. Rptr. 3d 1, 25 (Cal. Ct. App. 2019) ("California law accepts and follows the Restatement of Torts on the issue of superseding cause.").

Here, R.L.'s intervening criminal acts sufficiently separate Meta's conduct from Plaintiff's injuries. In *Steinle*, the Ninth Circuit held that a defendant's alleged negligence in storing a pistol was not the proximate cause of a death by gunshot after the pistol was stolen. 17 F.4th at 822, 824-25. Applying California law, the court reasoned that the "criminal and negligent actions of at least two other people intervened" between the defendant's storage of the pistol and the lethal shot, which was "simply too attenuated from [the defendant's] initial act for liability to be imposed." *Id.* at 824.

The same is true here. Taking Plaintiff's allegations as true, third party R.L. purportedly devised a plan to approach Plaintiff over Instagram and "lure" her into an offline meeting, after which he began to traffic her for sex. Dkt. 102 ¶71. R.L. then allegedly advertised her for sex acts, sold her for those acts, and beat her if she refused to participate. *Id.* ¶¶74-75, 80-83. R.L.'s intentional, criminal acts broke the causal chain, "interven[ing] in the chain of causation, producing harm of a kind and degree so far beyond the risk [Meta] should have foreseen that the law deems it unfair to hold [Meta] responsible." *Chanda v. Fed. Home Loans Corp.*, 155 Cal. Rptr. 3d 693, 701 (Cal. Ct. App. 2013). Notably, R.L.'s independent criminal actions distinguish

18

this case from others where the design of social-media services *themselves* allegedly caused injuries. *See, e.g.*, *Social Media Litig.*, 2023 WL 7524912, at *40-41.

**C.     Because Instagram Is Not a Product, Plaintiff's Product Liability Claims Fail (Counts 2–5).**

In any event, Plaintiff's claims fail as a threshold matter because Instagram is not a *product*. A plaintiff asserting defective or negligent design claims (Counts 2 and 4) or claims that a defendant failed to warn about a purportedly dangerous product (Counts 3 and 5) must show that the purportedly defective object "was in fact a 'product' as defined or contemplated by the Restatement of Torts, legislation or case law." *Brooks v. Eugene Burger Mgmt. Corp.*, 264 Cal. Rptr. 756, 764 (Cal. Ct. App. 1989); *see Merrill v. Navegar, Inc.*, 26 Cal. 4th 465, 479 (2001) (negligent design is species of product liability). Products are commercially distributed "tangible personal property." *McIndoe v. Huntington Ingalls Inc.*, 817 F.3d 1170, 1173 (9th Cir. 2016) (quoting Restatement (Third) of Torts: Prods. Liab. §19(a) (1998)); *accord Johnson v. U.S. Steel Corp.*, 192 Cal. Rptr. 3d 158, 165 (Cal. Ct. App. 2015). That is, product liability does not reach "intangible goods or services." *Merritt v. Countrywide Fin. Corp.*, 2015 WL 5542992, at *22 (N.D. Cal. Sept. 17, 2015), *aff'd*, 783 F. App'x 717 (9th Cir. 2019).

Attempts to apply product theories to websites or applications that facilitate communication and connections between users have consistently failed. For example, in the *Social Media Cases*, the California superior court rejected four product-liability-based causes of action: strict liability for both design defect and failure to warn, negligent product design, and negligent failure to warn—the exact claims at issue here. 2023 WL 6847378, at *14-21 (Cal. Super. Ct. Oct. 13, 2023). The court there held that the social-media services were not products: "[t]he interactions between [owners of social-media services] and [plaintiff users] . . . are different

19

DEFENDANT META PLATFORMS, INC.'S NOTICE OF MOTION & RULE 12(B)(6) MOTION TO DISMISS
THIRD AMENDED COMPLAINT
CASE NO.: 23-CV-02387-RFL

from typical product sales," the services "do not sell [p]laintiffs a static product," and consumers do not "experience [the services] in a uniform manner," as they would a product. *Id.* at *16 (emphasis omitted). Likewise, social-media services do not fit California state law's traditional tests for product liability. Each test "proceed[s] from the premise that a product is a static thing," to "determine what an 'ordinary consumer' would expect when using [it]." *Id.* at *20. But social-media services "are not static things"; they lack a singular "anticipated 'product' functionality." *Id.* Courts applying California law routinely agree. *See, e.g.*, *Jacobs v. Meta Platforms, Inc.*, 2023 WL 2655586, at *4 (Cal. Super. Ct. Mar. 10, 2023) ("Facebook is more akin to a service than a product."); *Ziencik v. Snap, Inc.*, 2023 WL 2638314, at *4 (C.D. Cal. Feb. 3, 2023) (Snapchat not a product); *Jackson v. Airbnb, Inc.*, 639 F. Supp. 3d 994, 1010 (C.D. Cal. 2022) (Airbnb not a product); *Estate of B.H. v. Netflix, Inc.*, 2022 WL 551701, at *3 (N.D. Cal. Jan. 12, 2022) (product liability theories do not apply to "books, movies, or other forms of media"); *Doe No. 1 v. Uber Techs., Inc.*, 294 Cal. Rptr. 3d 664 (Cal. Ct. App. 2022) (plaintiffs did not appeal holding that Uber is not a product); *accord In re Facebook, Inc.*, 625 S.W.3d 80, 85 n.1 (Tex. 2021) (noting trial court's dismissal of product claim because "Facebook is not a 'product'").

This makes good sense. An intangible social-media service like Instagram is not a "product" under California law because it is not a "*physical article* which results from a manufacturing process and is ultimately delivered to a consumer." *Green v. ADT, LLC*, 2016 WL 3208483, at *3 (N.D. Cal. June 10, 2016) (emphasis added) (quoting *Pierson v. Sharp Mem'l Hosp., Inc.*, 264 Cal. Rptr. 673, 676 (Cal. Ct. App. 1989)). Plaintiff's insistence that Instagram is a "social media product," *e.g.*, Dkt. 102 ¶¶95, 117, 152, 172, 198, is not to the contrary. Courts are not bound to accept a legal conclusion couched as a factual allegation. *See Iqbal*, 556 U.S. at

20

678; *see also Sharufa v. Festival Fun Parks, LLC*, 263 Cal. Rptr. 3d 112, 120 (Cal. Ct. App. 2020) (whether something is a product is a question of law).

The policy considerations animating product-liability law confirm that Instagram is not a product. Possession of a manufactured physical product means that "[a] defect in the article . . . is ultimately objectively measurable." *Pierson*, 264 Cal. Rptr. at 676. But the same cannot be said of services or intangible goods—much less a communications service like Instagram. *See In re Breast Implant Prod. Liab. Litig.*, 503 S.E.2d 445, 448-49 (S.C. 1998) (sale of products involves "qualitatively different" considerations than provision of services based on "knowledge and skill"); *accord James v. Meow Media, Inc.*, 300 F.3d 683, 700-01 (6th Cir. 2002) ("video games, movies, and internet sites" are not "products"). Instagram is "not [a] static thing[ ]" at all; "[it is a ]program[ ] that facilitates an interactive experience." *Social Media Cases*, 2023 WL 6847378, at \*20. And expanding product-liability law to intangible services that allow communication between users would "seriously inhibit" that communication and present significant constitutional problems under the First Amendment. *Winter v. G.P. Putnam's Sons*, 938 F.2d 1033, 1034-35 (9th Cir. 1991).[6]

### D. Plaintiff Does Not and Cannot Allege That Meta Owed Her a Legal Duty (Counts 4–5).

Plaintiff's negligence claims fail as a matter of law because she does not articulate a cognizable duty of care—a legal question properly raised at the pleading stage. *See Hegyes v.*

---

[6] Imposing on Meta a duty to verify the age or identity of its users would violate Meta's rights, as a publisher, to decide whom to publish on its social-media service. *See, e.g., NetChoice, LLC v. Att'y Gen., Fla.*, 34 F.4th 1196, 1210 (11th Cir. 2022) ("Social-media platforms like Facebook . . . are private companies with First Amendment rights," including the right to "remove[ ] . . . a user or post"), *cert. granted in part sub nom. Moody v. NetChoice, LLC*, 144 S. Ct. 478 (2023).

21

*Unjian Enters., Inc.*, 234 Cal. App. 3d 1103, 1111 (1991). Plaintiff seeks to impose on Meta a duty to protect users from dangers posed by third-party traffickers. But "[d]uty is not universal," and "not every defendant owes every plaintiff a duty of care." *Brown v. USA Taekwondo*, 483 P.3d 159, 164 (Cal. 2021). To adequately plead a duty, Plaintiff must allege (1) an exception to the no-duty-to-protect rule, whether it be a special relationship or an act of "misfeasance." *See id.* at 165. And if such an exception applies, (2) that the putative duty survives the *Rowland* factors. *See id.* at 166-67 (citing *Rowland v. Christian*, 443 P.2d 561 (Cal. 1968)); *see also Airbnb*, 639 F. Supp. 3d at 1006-07 (misfeasance and special-relationship exceptions are "expansions of duty rules and must, in each case, pass muster under *Rowland* in order to apply"). The complaint fails at each step.

1.      **The Complaint Does Not Plead Facts Sufficient to Establish an Exception to the No-Duty-to-Protect Rule.**

Plaintiff fails to allege facts that satisfy any exception to the no-duty-to-protect rule—either misfeasance by Meta or a special relationship between Meta and either Plaintiff or R.L.

***Misfeasance.*** Under California law of misfeasance, when a defendant takes an "affirmative act . . . [that] create[s] an undue risk of harm," the defendant has a duty to act. *Weirum v. RKO Gen., Inc.*, 539 P.2d 36, 41 (Cal. 1975). It is not enough that a defendant may have merely "create[d] an opportunity" for injurious conduct or that such harms are simply a "foreseeable result of a defendant's actions. *Uber*, 294 Cal. Rptr. 3d at 677-78. The hallmark of misfeasance is whether the injurious conduct is a "necessary component" of the defendant's actions. *Id.* at 678; *Airbnb*, 639 F. Supp. 3d at 1008.

It is well-settled that "creat[ing] connections" between users, Dkt. 102 ¶65, is not misfeasance. For example, in *Uber* the court held that a ride-sharing application had no duty to

22

protect plaintiffs abducted and sexually assaulted by fake Uber drivers. *See* 294 Cal. Rptr. 3d at 678-79. Although (1) a "fake Uber scheme may be a foreseeable result of the Uber business model" and (2) that model made it easier for the assailants to commit crimes, the connections created by the Uber application did not render the plaintiffs' abduction and sexual assault "necessary components" of Uber's business model. *Id.* at 427. California courts similarly recognize that proprietors of gathering places have no duty of care to protect their guests even from foreseeable violent or destructive conduct, precisely because that conduct is not a necessary component of the proprietors' business. *See Sakiyama v. AMF Bowling Ctrs., Inc.*, 1 Cal. Rptr. 3d 762, 769-70 (Cal. Ct. App. 2003) (collecting cases).

These principles hold even more true here. The complaint does not—and could not—allege facts sufficient to establish that heinous conduct like sex trafficking is a "necessary component" of Meta's business model. Even if the broad claims that Meta designed Instagram in a way that "enabled sex trafficking," Dkt. 102 ¶41; *see id.* ¶¶36-38, 44, 50-59, might suggest Meta "creat[ed] an opportunity" for some individuals to engage in sex trafficking, that would "not render [R.L.'s] conduct a necessary component of [Meta's] actions—even when that conduct is foreseeable," *Uber*, 294 Cal. Rptr. 3d at 679.

***Special Relationship.*** The complaint likewise alleges no duty based on a special relationship because Meta had no "ability to control" R.L.'s conduct. *Regents of Univ. of Cal. v. Superior Court*, 413 P.3d 656, 664 (Cal. 2018). Nor does the complaint allege that Plaintiff was "dependent" on Meta or that Meta had "control over the [P]laintiff's welfare"—the hallmarks of a special relationship. *Id.* at 665. In any event, Plaintiff could not plead such a relationship, as courts have consistently declined to recognize a special relationship between websites and their

23

users. *See Dyroff*, 934 F.3d at 1101; *Young v. Facebook, Inc.*, 2010 WL 4269304, at *5 (N.D. Cal. Oct. 25, 2010).

### 2.     The *Rowland* Factors Do Not Support a Duty.

The lack of any recognized basis for a duty is reason alone to dismiss the negligence claims. But even if the complaint alleged facts supporting either conceivable source of duty, the *Rowland* factors would "limit" any such duty given both the low degree of foreseeability and weighted policy concerns. *See Brown*, 483 P.3d at 166 (citing *Rowland*, 443 P.2d 561).

The first set of *Rowland* factors goes to foreseeability. As discussed above, *see supra* §§I(B)(1)-(2), the trafficking and abuse of Plaintiff were multiple steps removed from the Instagram design characteristics that Plaintiff challenges. Plaintiff's alleged harms were the direct result of conduct by R.L.—not Meta. This disconnect between Meta's conduct and Plaintiff's alleged harms "significantly weakens" her claim that Meta owed her a duty. *Modisette*, 241 Cal. Rptr. 3d at 219. Indeed, California courts will not impose a duty when "the injury suffered is connected only distantly and indirectly" to an allegedly negligent action. *Regents*, 413 P.3d at 672.

The facts here fall short. Plaintiff fails to plead the "very high degree of foreseeability [that is] required" to impose a duty in these circumstances, when the claims implicate expression on Instagram and no "simple means" exists by which Meta can predictably stop third parties like R.L. from engaging in violent conduct off Instagram. *McCollum v. CBS, Inc.*, 249 Cal. Rptr. 187, 196 (Cal. Ct. App. 1988).

Plaintiff's claims would also threaten free expression—thereby implicating the second set of *Rowland* factors going to public policy considerations. The "moral blame" for R.L.'s

24

intentional violent and abusive conduct falls squarely on him. *McCollum*, 249 Cal. Rptr. at 195. Meta had no control over his actions or his decision to traffic Plaintiff. Yet if Plaintiff's claims prevail, Meta would have to monitor, limit, and restrict users' content on Instagram to avoid future liability—a liability extending even to users' activities in the physical world. Accordingly, imposing a legal duty on websites to prevent offline harms would have a "significant chilling effect upon Internet free speech." *Delfino v. Agilent Techs., Inc.*, 52 Cal. Rptr. 3d 376, 398 (Cal. Ct. App. 2006). The burden created by such a duty would be debilitating: the risk of "malicious acts" by third parties anywhere in the world that might relate to social media content is not "readily insurable." *Id.* at 398-99; *see also Coordinated Proceeding Special Title (Rule 3.400) Social Media Cases*, 2024 WL 2980618, at *12 (Cal. Super. Ct. June 7, 2024) ("Courts invoke the concept of duty to limit generally the otherwise potentially infinite liability which would follow from every negligent act."). As a result, for "claims implicating expression" like these, California courts applying *Rowland* routinely decline to find a duty. *Netflix*, 2022 WL 551701, at *3-4. And in any event, the duty proposed by Plaintiff here is one that states effectuate "by statute," not through judicial decisions. *Twitter, Inc. v. Taamneh*, 598 U.S. 471, 501 n.14 (2023).

## CONCLUSION

Meta respectfully requests that the Court dismiss Plaintiff's complaint with prejudice because further amendment would be futile. Plaintiff has failed in three attempts to state a cognizable claim against Meta.

25

Dated: June 18, 2024

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

*/s/ Collin J. Cox*

By: Collin J. Cox

Attorneys for Defendant META
PLATFORMS, INC. (f/k/a Facebook, Inc.)

26

## CERTIFICATE OF SERVICE

I hereby certify that on June 18, 2024, I served a copy of the above document on all counsel of record via the Court's CM/ECF system.

*/s/ Collin J. Cox*

27