UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANE DOE (K.B.),<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>BACKPAGE.COM, LLC, et al.,<br><br>　　　　Defendants. | Case No.  23-cv-02387-RFL<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: Dkt. No. 105 |

　　　　Plaintiff Jane Doe alleges that she was a victim of horrific sex trafficking crimes on Instagram, a social media platform owned by Defendant Meta Platforms, Inc. ("Meta"), where she was repeatedly sold for unlawful sex acts over the course of a year.  Her trafficker was later convicted in a criminal trial and sentenced to 40 years in prison.  Doe now sues Meta, alleging that it facilitated and financially benefited from her sex trafficking, in violation of the federal civil sex trafficking statute, 18 U.S.C. § 1595.  Doe also asserts products liability claims for design defect and failure to warn, alleging that Meta defectively designed Instagram because it lacked identity verification procedures and adequate mechanisms to report sex trafficking, as well as failed to provide adequate warnings about the known danger of trafficking on Instagram.  Meta argues that § 230 of the Communications Decency Act bars liability.  For the reasons explained below, under Ninth Circuit precedent, § 230 immunizes Meta from Doe's claims because Doe ultimately seeks to hold Meta responsible based on its role as a publisher of others' sex trafficking content.  The motion to dismiss for failure to state a claim is therefore **GRANTED** without leave to amend.

### I.　　FACTUAL BACKGROUND

　　　　The Third Amended Complaint ("Complaint" or "TAC") reasserts two theories for why

Meta is liable under the federal civil sex trafficking statute, 18 U.S.C. § 1595.  First, Doe alleges that Meta—through its social media platform, Instagram—has "created a breeding ground for human trafficking, and has knowingly benefited from facilitating a trafficking hub."  (TAC ¶ 1.)  Second, Doe alleges that Meta uses its algorithms to create "connections" between traffickers and victims "at all costs, even when they know those connections are harmful."  (*Id.* ¶ 3.)

The Complaint also asserts new products liability claims for design defect and failure to warn.  With respect to Doe's design defect claims, Doe alleges that Meta designed an unreasonably dangerous product by (1) failing to incorporate identity and age verification requirements into its account setup process and (2) failing to establish a reporting mechanism whereby users could report sex trafficking.  According to Doe, Meta "intentionally designed its social media products to not include common sense precautions such as age and identity verification or a meaningful mechanism to prevent traffickers from operating [through] fake accounts."  (*Id.* ¶ 41.)  Thus, Meta's "design choice enables traffickers, including Jane Doe's trafficker, to adopt false identities, allowing them to pose as peers to their intended victims and to disguise their true identity from law enforcement."  (*Id.*)

Additionally, Doe alleges that Meta "designed its Instagram product to not include an adequate mechanism to report sex trafficking on the product that would have enabled [it] to report traffickers to appropriate law enforcement authorities."  (*Id.* ¶ 42.)  Even where Meta does "allow[] a user to report inappropriate content . . . there is no immediate response mechanism through which" Meta takes timely action.  (*Id.*)  As a result, any report that is made is "almost always ineffectual."  (*Id.* ¶ 43.)  Thus, Meta's product is allegedly "defective in design" because it poses a "substantial likelihood of harm to its users."  (*Id.* ¶ 124.)

Finally, with respect to Doe's failure to warn claims, Doe alleges that Meta "sold and distributed its Instagram product in a defective and unreasonably dangerous condition by failing to adequately warn about the risk of sex trafficking" on the platform, which "rendered the product unsafe for its intended or reasonably foreseeable uses."  (*Id.* ¶ 159.)  According to Doe, Meta was obligated to warn users that "sex trafficking is rampant" on the platform, or at the

least, that "foreseeable product use included interactions with traffickers who could seek to groom, recruit, and sell an unsuspecting user into sex trafficking" or that "a victim may be approached by sex traffickers operating under fake accounts and false identities." (*Id.* ¶ 162.) Thus, because Meta's Instagram product does not contain such warnings, Doe alleges that it is unreasonably dangerous.

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint that fails to meet this standard may be dismissed pursuant to Rule 12(b)(6). *See* Fed. R. Civ. P. 12(b)(6). To overcome a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The court "accept[s] all factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Rowe v. Educ. Credit Mgmt. Corp.*, 559 F.3d 1028, 1029–30 (9th Cir. 2009) (citation omitted). "Dismissal is appropriate when the complaint lacks a cognizable legal theory or sufficient factual allegations to support a cognizable legal theory." *Saloojas, Inc. v. Aetna Health of Cal., Inc.*, 80 F.4th 1011, 1014 (9th Cir. 2023) (quoting *Beckington v. Am. Airlines, Inc.*, 926 F.3d 595, 604 (9th Cir. 2019)). Rule 12(b)(6) also "authorizes a court to dismiss a claim on the basis of a dispositive issue of law." *Seismic Reservoir 2020, Inc. v. Paulsson*, 785 F.3d 330, 335 (9th Cir. 2015) (quoting *Neitzke v. Williams*, 490 U.S. 319, 326 (1989)).

## III.    DISCUSSION

Section 230(c) provides: "No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). That section has been interpreted to "protect[] apps and

websites which receive content posted by third-party users (i.e., Facebook, Instagram, . . . etc.) from liability for any of the content posted on their services, even if they take it upon themselves to establish a moderation or filtering system, however imperfect it proves to be." *Est. of Bride by & through Bride v. Yolo Techs., Inc.*, 112 F.4th 1168, 1175–76 (9th Cir. 2024). Section 230's immunity applies to the decision of "whether to publish . . . third-party content" and whether "to withdraw from publication" such content. *Sikhs for Just. "SFJ", Inc. v. Facebook, Inc.*, 144 F. Supp. 3d 1088, 1094 (N.D. Cal. 2015), *aff'd*, 697 F. App'x 526 (9th Cir. 2017) (quoting *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1102 (9th Cir. 2009)). This grant of immunity persists unless the service is itself "'responsible, in whole or in part, for the creation or development of' the offending content." *Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1162 (9th Cir. 2008) (en banc) (quoting 47 U.S.C. § 230(f)(3)).

The Ninth Circuit has articulated a three-part test governing Section 230 immunity. Section 230 bars any claim where: "(1) a provider or user of an interactive computer service (2) whom a plaintiff seeks to treat, under a state law cause of action, as a publisher or speaker (3) of information provided by another information content provider." *Barnes*, 570 F.3d at 1100–01. Moreover, Section 230 confers immunity if "the duty" the plaintiff seeks to enforce "would necessarily require an internet company to monitor third-party content." *HomeAway.com, Inc. v. City of Santa Monica*, 918 F.3d 676, 682 (9th Cir. 2019). As detailed below, each of the duties at issue in Doe's Complaint ultimately seeks to hold Meta responsible based on its role as a publisher of third-party content that it failed to moderate or otherwise remove.

### A.  Civil sex trafficking claim

Doe alleges that Meta facilitated and financially benefited from her sex trafficking, in violation of the federal civil sex trafficking statute, 18 U.S.C. § 1595. The Court previously granted Meta's motion to dismiss this claim on § 230 immunity grounds. *See Doe (K.B.) v. Backpage.com, LLC*, 724 F. Supp. 3d 882 (N.D. Cal. 2024). As explained in the order, the Second Amended Complaint asserted two theories of liability: that Meta operates Instagram as a "breeding ground" for sex trafficking, and that Meta creates connections between traffickers and

their victims through the use of algorithms. *Id.* at 884. Both theories of liability were held to be precluded by § 230 because they "inherently require[d] the court to treat the defendant as the 'publisher or speaker' of content provided by another." *Id.* (quoting *Dyroff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1098 (9th Cir. 2019)). The Third Amended Complaint reasserts those theories, adding no new allegations relevant to them. They therefore fail for the same reasons previously explained.

First, Doe's breeding ground theory is foreclosed by § 230 because it "essentially seeks to hold Meta liable for failing to remove traffickers' grooming messages and posts advertising their victims for sex." *Id.* As in the Second Amended Complaint, the Third Amended Complaint does not allege "that Meta, rather than third parties, created and developed such content." *See id.*

Second, as explained in the Court's prior order, Doe's connection theory is foreclosed by *Dyroff v. Ultimate Software Group, Inc.*, 934 F.3d 1093, 1094–95 (9th Cir. 2019). In that case, a social networking website was immunized from suit by Section 230 after a user died from heroin purchased through a connection made on the website. *Id.* To avoid Section 230 immunity, the plaintiff there argued that the website did not simply "publish[ ] information created or developed by third parties," but instead, created and developed content by using "features and functions, including algorithms, to analyze user posts . . . and recommend other user groups," which "include[d] the heroin-related discussion group to which [the user] posted and (through its emails and push notifications) to the drug dealer who sold him the fentanyl-laced heroin." *Id.* at 1098. The Ninth Circuit rejected that argument, holding that "[t]hese functions—recommendations and notifications—are tools meant to facilitate the communication and content of others," and "not content in and of themselves" created by the website. *Id.*

In the Third Amended Complaint, Doe again claims that Meta's algorithms facilitated her sex trafficking by "[c]reating, suggesting, and encouraging connections between sex traffickers and vulnerable persons on Instagram" and "[r]ecommending that vulnerable persons become Instagram 'friends' with sex traffickers." (TAC ¶ 109); *see also Doe (K.B.)*, 724 F. Supp. 3d at

885 (previously dismissing claim based on identical language in the SAC).  Although Doe does not argue that Meta's algorithms are themselves Meta's content—as the plaintiff in *Dyroff* did—Doe articulates a theory that is essentially analogous: that because her claims are based on Meta connecting her to a certain person, not directing her to certain content, Section 230 does not apply.  (Dkt. No. 107 at 11 ("[E]mploying algorithms to connect traffickers and victims is still not 'publisher' conduct under Section 230").)[1]  But Doe "cannot plead around Section 230 immunity by framing" her claim as one involving Meta's connection algorithms rather than the consequence of what the algorithm facilitates: promotion of third-party user-generated sex trafficking content.  *Dyroff*, 934 F.3d at 1098.  And as the Court explained in its prior order, where Doe's theory of liability is based on the "content of the subsequent interaction," the claim is barred.  *Doe (K.B.)*, 724 F. Supp. 3d at 885.

      Relying on a recent out-of-circuit decision, Doe now advances an argument that *Dyroff* was overruled by the Supreme Court's recent decision in *Moody v. NetChoice LLC*, 603 U.S. 707 (2024).  *See Anderson v. TikTok, Inc.*, 116 F.4th 180, 184 (3d Cir. 2024) (holding that TikTok's algorithm—which curated content on users' For You Page—was TikTok's own "'expressive activity,' and thus its first party speech," outside the protections of Section 230, based on *NetChoice*).  However, the Court does not read *NetChoice* as overruling *Dyroff*.  *NetChoice* does not address Section 230 liability.  Instead, *NetChoice* holds only that a platform's "editorial judgments" about "compiling the third-party speech it wants in the way it wants" reflects the platform's "own views and priorities"—and therefore warrants First Amendment protection.  *NetChoice*, 603 U.S. at 718.  Doe's argument therefore appears to presuppose that editorial decisions cannot be both an expression of a publisher's point of view (protected under the First Amendment) and a publication of a third-party's content (protected under Section 230).  However, Doe provides no basis on which the Court should conclude that Section 230 immunity is mutually exclusive with First Amendment protection.  Indeed, the undisputed core of Section

---

[1] Citations to page numbers refer to the ECF pagination.

230 immunity protects a website's morderation decisions, in its role as a "publisher," about which third-party content to remove and which to permit. That those moderation decisions are *also* protected by the First Amendment does not strip them of their Section 230 immunity. To hold otherwise would effectively render the core of Section 230 a nullity, contrary to Congress's intent and the plain language of the statute. In sum, *NetChoice* does not provide a basis for revisiting the prior ruling on Doe's civil sex trafficking claims.[2]

### B. Products liability claims

Doe also brings products liability claims against Meta for design defect (Counts 2 and 4) and failure to warn (Counts 3 and 5). As previously explained, Section 230 precludes liability where "(1) a provider or user of an interactive computer service (2) whom a plaintiff seeks to treat, under a state law cause of action, as a publisher or speaker (3) of information by another information content provider." *Barnes*, 570 at 1100–01. There is no dispute that Meta is an interactive computer service provider, so the parties' dispute focuses on the second and third prongs with respect to each claim.

"The second and third prongs of *Barnes* require [the Court] to consider each cause of action alleged 'to determine whether a plaintiff's theory of liability would treat a defendant as a publisher or speaker of third-party content.'" *Doe v. Grindr Inc.*, __ F.4th __, No. 24-cv-00475, 2025 WL 517817, at *2 (9th Cir. Feb. 18, 2025) (quoting *Calise v. Meta Platforms, Inc.*, 103 F.4th 732, 740 (9th Cir. 2024) (internal quotation omitted)). Thus, the Court must ask "whether the duty the plaintiff alleges the defendant violated derives from the defendant's status or conduct as a 'publisher or speaker.'" *Calise*, 103 F.4th at 740 (quoting *Barnes*, 570 F.3d at 1102); *see also Barnes*, 570 F.3d at 1101–02 ("[W]hat matters is not the name of the cause of action . . . [but] whether the cause of action inherently requires the court to treat the defendant as the 'publisher or speaker' of content provided by another."). Therefore, the Court must

---

[2] The Allow States and Victims to Fight Online Sex Trafficking Act provides an exception for particular sex trafficking claims. *See Does v. Reddit, Inc.*, 51 F.4th 1137, 1140–41 (9th Cir. 2022). Although Doe argues that "*Reddit* was wrongly decided," she concedes that under current Ninth Circuit precedent, the exception does not apply. (Dkt. No. 107 at 11.)

separately analyze each duty that Doe alleges was required by Meta in order to determine whether the claim itself is barred by Section 230. For the reasons described below, Section 230 precludes all of Doe's products liability claims.

### 1.   Design defect theory

Doe alleges strict products liability (Count 2) and negligence (Count 4) for design defect. Both counts assert that Meta designed an unreasonably dangerous product by failing to include identity and age verification requirements as part of the account setup process and by failing to create a reporting process whereby users could report sex trafficking. These "duties" are analyzed in turn.

#### a.   Identity and age verification requirements

First, Doe alleges that Meta should have incorporated identity and age verification procedures into its account setup process. (TAC ¶ 130 (Meta "designed, manufactured, marketed, and sold its Instagram product in an unreasonably dangerous condition because it did not include adequate identity verification or mechanisms to prevent users from creating fake accounts.").) It is Doe's view that imposing these duties would not require Meta to "monitor third-party content on Instagram or otherwise perform 'publisher' activities" because these duties relate to the "account creation process—a step that occurs before the third-party user can post content and therefore before any published third-party content exists." (Dkt. No. 107 at 12.) Therefore, Doe argues, these claims are not precluded by Section 230.

Doe's arguments are foreclosed by Ninth Circuit precedent. In *Doe v. Grindr Inc.*, the Ninth Circuit recently held that a plaintiff's design defect claims were barred by Section 230 because they sought to hold the defendant liable for its conduct as a publisher. In that case, a minor plaintiff created an account on Grindr's App, representing that he was over 18 years old. Grindr's App matched the plaintiff with four men, all of whom allegedly raped the plaintiff. With respect to his design defect claim, the plaintiff's "theory of liability [was] that Grindr breached its duty not to design . . . defective products by failing to prevent a minor from being matched with predators, by matching users based on geographic data it extracted from them, and

by allowing [the plaintiff] to communicate with abusive adults," even when safer alternative designs were feasible. *Doe*, 2025 WL 517817, at *3. The Ninth Circuit concluded that the claim was barred by Section 230 because the "challenged features of the App"—which "were meant to facilitate the communication and content of others"—were "not independent of Grindr's role as a facilitator and publisher of third-party content." *Id.* (internal quotations omitted).

That reasoning applies with equal force to the facts of this case. Here, Doe's theory of liability derives from Meta's alleged failure to include adequate age and identity verification measures that would prevent the creation of fake accounts facilitating sex trafficking communications. The duty to include these challenged features is "not independent" of Meta's role as the "facilitator and publisher of third-party content" published on the platform. To the contrary, the duty cuts to the core of Meta's role as a publisher: that is, determining who can and cannot speak on its platform. Doe's proposed verification requirements are designed with the particular purpose of limiting who will create an Instagram account, and more specifically, limiting the types of content likely to be posted from those accounts (i.e., sex trafficking content). A platform's decision as to whether to allow anonymous speech, and the consequent effects on the content of the speech that proliferates on the platform, is a classic publication decision. It is a determination of who may speak, and thus, whose content may be barred on the platform. *See Barnes*, 570 F.3d at 1102 (the act of "publication involves reviewing, editing, and deciding whether to publish or to withdraw from publication third-party content"); *Est. of Bride*, 112 F.4th at 1179–80 (finding Section 230 barred design defect claims based on the theory that a platform's "anonymity" facilitated cyberbullying and thus was "unreasonably dangerous," because that theory attempts "to hold [the platform] responsible for users' speech or [the platform's] decision to publish it").

The outcome might be different if Doe sought to impose verification requirements for reasons independent of the third-party content produced by anonymous accounts. Here, though, Doe's allegations are clear that the source of the duty is the danger that unverified accounts allow traffickers "to adopt false identities, allowing them to pose as peers to their intended victims and

9

to disguise their true identity from law enforcement." (TAC ¶ 41.)  As such, Doe's claims are squarely foreclosed under *Doe v. Grindr*.

Doe relies heavily on *Lemmon v. Snap, Inc.*, to support her argument.  995 F.3d 1085 (9th Cir. 2021).  But for the same reasons as articulated by the Ninth Circuit in *Doe v. Grindr*, that case is inapposite.  In *Lemmon*, Plaintiffs sued Snap on a design defect theory for their creation of a "Speed Filter," which allowed users to record and superimpose their speed on top of their recorded photos or videos through Snapchat.  The Ninth Circuit held that Section 230 did not bar the claim because the plaintiffs "[did] not fault Snap in the least for publishing" third-party messages generated using the Speed Filter.  *Id.* at 1093.  The claim did not depend on "what messages, if any, a Snapchat user employing the Speed Filter actually sen[t]."  *Id.* at 1094.  Instead, the plaintiffs sought to hold Snap liable for creating the Speed Filter as a product in the first place.  The court therefore found that the theory of liability stemmed from Snap's "distinct capacity as a product designer," and not from Snap's role as the publisher of any message.  *Id.* at 1092.  That was evidenced by the fact that "Snap could have satisfied its 'alleged obligation'—to take reasonable measures to design a product more useful than it was foreseeably dangerous—without altering the content that Snapchat's users generate."  *Id.*; *see also Doe*, 2025 WL 517817, at *3 ("[Snap's] duty to avoid designing a product that encouraged dangerous driving was 'fully independent of defendant's role in monitoring or publishing third-party content,' and it did not 'seek to hold the defendant responsible as a publisher of speaking'" (quoting *Lemmon*, 995 F.3d at 1093)).  Here, by contrast, Doe is seeking to hold Meta liable for its determination of who can and cannot access its platform to speak in the first place, which cuts to the core of Meta's role as a publisher.  Thus, this claim is barred by Section 230.

### b.     Reporting requirement

Additionally, Doe argues that Meta created a defectively designed product because it did not "provide a reasonable tool by which to report sex trafficking" and instead "largely just directs users to call law enforcement or contact anti-trafficking organizations."  (TAC ¶¶ 42, 133.)  Furthermore, Doe states that "even where Instagram allows a user to report inappropriate

10

content . . . such that a user could theoretically report trafficking, there is no immediate response mechanism" through which Meta "takes timely action." (*Id.* ¶ 42.) In other words, the asserted duty is not only to create a mechanism by which third-party content may be reported, but to monitor and act on those reports as well. Accordingly, the justification for why Meta may be held liable springs from its failure to monitor, and moderate, the third-party content enabled by Instagram.

This duty is again directed at Meta's role as a publisher. The right from which "the duty springs" is Meta's role as the alleged publisher of the sex trafficking posts. *Calise*, 103 F.4th at 742. Doe does not contend, for example, that the manufacturer of the phone she used to access Instagram is required to provide her with a notification mechanism, like a button, that would allow her to report sex trafficking. Instead, Doe alleges that Meta is the one who owes her that duty because Meta "knew or should have known" that Instagram "attracts, enables, and facilitates sex traffickers, and sex traffickers use its Instagram product to recruit and sexually exploit other Instagram users like Jane Doe." (TAC ¶ 57.) In other words, Meta owes the duty because of the third-party content that Meta allows to be published on its platform, and because Meta has failed to effectively monitor and remove it. As such, Doe is seeking to impose liability against Meta based on its publication of the third-party content, which is precisely the type of claim precluded by Section 230.

### 2. Failure to warn theory

Doe also argues that Meta's Instagram product is unreasonably dangerous under a failure to warn theory (Counts 3 and 5) because it "lacks any warnings that sex trafficking is rampant" on the platform, or that "foreseeable product use included interaction with traffickers." (*Id.* ¶ 162.) Relatedly, Doe argues that Meta's products do not include warnings that users are allowed to make fake accounts, which facilitates a sex trafficker's ability to obscure their identity when engaging victims.

Here, again, Doe's theory of liability springs from Meta's role as a publisher. According to Doe, Meta had a duty to warn users about the risks of sex trafficking on its platform because

Meta's platform is the vehicle through which the third-party sex trafficking content is published. The Ninth Circuit's opinion in *Estate of Bride by and through Bride v. Yolo Technologies, Inc.* is directly on point as to this issue. 112 F.4th 1168 (9th Cir. 2024). There, the plaintiff alleged that the app developed by YOLO encouraged cyberbullying due to its anonymity. The Ninth Circuit found that Section 230 precluded the plaintiff's product liability claim based on failure to warn because "the failure to warn claim faults YOLO for not mitigating, in some way, the harmful effects of harassing and bullying content." *Id.* at 1180. "This is essentially faulting YOLO for not moderating content in some way, whether through deletion, change, or suppression." *Id.* The same logic applies to Doe's claim here.

Doe contends that her case is more like *Doe v. Internet Brands, Inc.*, 824 F.3d 846 (9th Cir. 2016). That case, though, did not involve an allegation that the defendant's liability sprang from its publication of objectionable content. There, the Ninth Circuit held that Section 230 did not bar a plaintiff's failure to warn claim where her theory of liability focused on a defendant's actual knowledge of a rape scheme. Specifically, a modeling website learned from outside sources that a pair of men were contacting women whose ads were posted on the website, luring them to fake auditions, and drugging and raping them. As the Ninth Circuit explained, the plaintiff's theory "ha[d] nothing to do with [the defendant's] efforts, or lack thereof, to edit, monitor, or remove user generated content"—but instead was based on defendant's "actual knowledge . . . from an outside source of information about criminal activity." *Id.* at 852–53; *see also Est. of Bride*, 112 F.4th at 1181 ("In short, the defendant in *Internet Brands* failed to warn of a known conspiracy operating independent of the site's publishing function."). And, in fact, the Ninth Circuit emphasized that the two men were not alleged to ever have posted on the modeling website, and the plaintiff did not "claim to have been lured by any posting" on the website. *Internet Brands*, 824 F.3d at 851. Therefore, the plaintiff's "failure-to-warn claim was not based on the defendant's failure to remove any user content or on the defendant's publishing or monitoring of third party content." *Doe*, 2025 WL 517817, at *3 (citing *Internet Brands*, 824 F.3d at 851). As a result, Section 230 did not preclude the claim.

12

By contrast, here, Doe is seeking to hold Meta liable as a publisher for its failure to warn of the generalized risk of sex trafficking content on its platform, and the use of fake accounts that might facilitate that content. *See id.* (similarly distinguishing *Internet Brands* because the plaintiff did "not allege that Grindr had independent knowledge of a conspiracy, and Grindr's role as a publisher of third-party content does not give it a duty to warn users of a general possibility of harm resulting from the App" (internal quotations omitted)). Accordingly, Section 230 precludes this claim.

In sum, Section 230 bars all of Doe's claims as pled. "When a plaintiff cannot allege enough facts to overcome Section 230 immunity, a plaintiff's claims should be dismissed." *Dyroff*, 934 F.3d at 1097. Because the claims are dismissed based on Section 230, the Court does not reach Meta's other arguments for dismissal.

### C. Leave to amend

Doe does not request leave to amend, but amendment would be futile in any event. Doe was previously afforded multiple opportunities to amend her Complaint. Although the Third Amended Complaint is the first in which Doe also pleaded products liability claims, Doe does not identify any additional facts she could allege to allow her claims to overcome Section 230. Accordingly, all of Doe's claims are dismissed without leave to amend.

### IV. CONCLUSION

Based on the foregoing, Meta's motion to dismiss the Third Amended Complaint is **GRANTED WITH PREJUDICE WITHOUT LEAVE TO AMEND**. The Clerk of the Court shall enter judgment in favor of Meta, and against Doe, and close the case.

**IT IS SO ORDERED.**

Dated: March 3, 2025

RITA F. LIN
United States District Judge